**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
**SYRACUSE DIVISION**

| | |
|---|---|
| Matthew Parish, *et al.*, *Plaintiffs*, -against- Peter S. Kosinski, *et al.*, *Defendants*. | Civ. No. 5:17-CV-0344(BKS/DEP) |

**MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

## INTRODUCTION

Both New York federal courts and New York state courts have already declared the witness residency requirements contained in party designating petitions and independent nominating petitions unconstitutional. *See Lerman v. Bd. of Elections*, 232 F.3d 135 (2d Cir. 2000) (declaring unconstitutional N.Y. Elec. Law § 6-132(2)); *Chou v. N.Y. State Bd. of Elections*, 332 F. Supp. 2d 510 (E.D.N.Y. 2004) (declaring unconstitutional N.Y. Elec. Law § 6-140(1)(b)); *LaBrake v. Dukes*, 96 N.Y.2d 913, 758 N.E.2d 1110 (N.Y. 2001) (declaring unconstitutional N.Y. Elec. Law § 6-132(2)); *McGuire v. Gamache*, 5 N.Y.3d 444, 840 N.E.2d 107 (N.Y. 2005) (declaring unconstitutional N.Y. Elec. Law § 6-140(1)(b)). These rulings, however, impact all New York elections, except village elections.

Plaintiffs Matthew Parish, Tom Connolly, Thomas Jaccarino, and the Independence Party of New York (collectively, "Plaintiffs"), ask that this Court now apply those rulings and enjoin either preliminarily or permanently the Defendants, their agents, and successors from enforcing the witness residency requirement contained in N.Y. Elec. Law §§ 6-204(1), 6-206(2), 15-108(3), and 15-108(4).

## STATEMENT OF FACTS

Plaintiffs, Matthew Parish, Thomas Jaccarino, and Tom Connolly want to serve as witnesses to both independent nominating petitions and party designating petitions in the upcoming June 20, 2017 elections in the Village of North Syracuse and the Village of Liverpool. *See* (Parish Decl. ¶¶ 4-5); (Jaccarino Decl. ¶¶ 4-5); (Connolly Decl. ¶¶ 4-5). However, because of the village residency requirement in N.Y. Elec. Law §§ 6-204(1), 6-206(2), 15-108(3), and 15-108(4), Plaintiffs cannot and have not circulated any petitions in either the Village of North Syracuse or the Village of Liverpool because they are not residents of either village. (Parish Decl. ¶¶ 2, 5); (Jaccarino Decl. ¶¶ 2, 5); (Connolly Decl. ¶¶ 2, 5).

Furthermore, the First Amendment rights of the Independence Party of New York and its members are harmed because although the Party has over half a million members statewide, the party is limited to using only 243 of those members in North Syracuse and only 84 members in Liverpool. (Connolly Decl. ¶¶ 9-10, 12). This drastically reduces the number of speakers the Independence Party may have in these village elections and therefore restricts core political speech and association rights. (Connolly Decl. ¶ 13).

## STANDARD OF REVIEW

Although the grant of a preliminary injunction is an extraordinary remedy, *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008), it is acutely necessary here where

First Amendment free speech rights are abridged in the midst of a political campaign because "[t]iming is of the essence in politics and a delay of even a day or two may be intolerable." *N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 486 (2d Cir. 2013); *see also id*. ("The loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury.") (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *see also Citizens United v. FEC*, 558 U.S. 310, 329 (2010) (noting that political speech is "[c]entral to the meaning and purpose of the First Amendment."). To obtain an injunction a plaintiff must demonstrate that "[h]e is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *N.Y. Progress & Prot. PAC*, 733 F.3d at 486. Because Plaintiffs here seek an injunction that alters the status quo, Plaintiffs must demonstrate a substantial likelihood of success on the merits. *See id*. In the First Amendment context, the likelihood of success on the merits prong "is the dominant, if not the dispositive, factor." *Id*. at 488; *Deferio v. City of Syracuse*, 193 F. Supp. 3d 119, 130 (N.D.N.Y. 2016) (Kahn, J.).

The burdens in a preliminary injunction setting track the burdens at trial. *See Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006). To prevail at trial, the Defendants bear the burden of demonstrating that New York's independent nominating petition witness residency requirement has a compelling interest and uses means that are narrowly tailored to achieve that interest. *See Citizens United*, 558 U.S. at 340. Appellants are therefore presumed to prevail absent the Defendants satisfying their burden. *See Ashcroft v. Am. Civil Liberties Union*, 542 U.S. 656, 666 (2004).

The Supreme Court has previously ruled that where, as here, the government has the ultimate burden to demonstrate that its statute does not violate the First Amendment's Free Speech Clause, then the Plaintiffs "must be deemed likely to prevail [on the merits] unless the Government has shown that [Appellants'] proposed less restrictive alternatives are less effective…" than New York's witness residency requirement. *See Ashcroft*, 542 U.S. at 666; *see also United States v. Playboy Entm't Group*, 529 U.S. 803, 816 (2000) ("[W]hen the government restricts speech, the government bears the burden of proving the constitutionality of its actions."). Thus it is the Defendants burden to demonstrate that they are likely to succeed on the merits.

## ARGUMENT

### I. PLAINTIFFS ARE SUBSTANTIALLY LIKELY TO SUCCEED ON THE MERITS.

#### A. Witnessing Petition Signatures Is Core Political Speech Protected Under The First Amendment.

##### i. Supreme Court

The U.S. Supreme Court has consistently ruled that those who circulate petitions to get either a candidate's name or an issue on the ballot are exercising their core political speech rights guaranteed under the First Amendment to the U.S. Constitution. *See Meyer v. Grant*, 486 U.S. 414, 422 (1988); *Buckley v. Am. Constitutional Law Found*., 525 U.S. 182, 186 (1999). The Supreme Court has characterized petition circulation as core political speech because petition circulation involves "[b]oth the expression of a desire for political change and a discussion of the merits of the proposed change." *Meyer*, 486 U.S. at 421; *Am. Constitutional Law Found*., 525 U.S. at 212 (Thomas, J., concurring) ("The aim of a petition is to secure political change, and the First Amendment, by way of the Fourteenth

Amendment, guards against the State's efforts to restrict free discussions about matters of public concern.”). Because the major purpose of the First Amendment “was to protect the free discussion of governmental affairs,” the First Amendment at least guarantees persons the ability to speak publicly and truthfully about “all matters of public concern without previous restraint or fear of subsequent punishment.” *First Nat'l Bank v. Bellotti*, 435 U.S. 765, 776-77 (1978); *Citizens United*, 558 U.S. at 339-40 (The First Amendment is “[P]remised on mistrust of governmental power” and is at “‘its fullest and most urgent application’ to speech uttered during a campaign for political office.”).

The Supreme Court has therefore subjected petition circulator requirements to strict scrutiny. *Meyer*, 486 U.S. at 421; *see also Am. Constitutional Law Found*., 525 U.S. at 192 n.12 (“Our decision is entirely in keeping with the “now-settled approach” that state regulations “imposing 'severe burdens' on speech . . . [must] be narrowly tailored to serve a compelling state interest.’”); *id*. at 206-08, 210-11 (Thomas, J., concurring). Under the lens of strict scrutiny, the Supreme Court has declared unconstitutional a state’s attempt to prohibit paying petition circulators, *Meyer*, 486 U.S. at 425; a state’s attempt to limit petition circulators to that state’s registered voters, *Am. Constitutional Law Found*., 525 U.S. at 197; and a state’s attempt to mandate petition circulators wear identification badges revealing the name of the petition circulator, *id*. at 199-200.

The Supreme Court has found that petition circulator requirements infringed on the First Amendment rights of the circulator and the candidate because they reduce the number of potential speakers to spread the candidate’s or initiative’s message. *Meyer*, 486 U.S. at 422-23 (noting that Colorado’s prohibition on paying petition circulators reduces the number of speakers who can convey the initiative’s message); *Am. Constitutional Law*

*Found.*, 525 U.S. at 194 ("The requirement that circulators be not merely voter eligible, but registered voters, it is scarcely debatable given the uncontested numbers...decreases the pool of potential circulators as certainly as that pool is decreased by the prohibition of payment to circulators...") (internal citations omitted). By reducing the number of people who can act as a candidate or initiative's petition circulator, these statutes also make it more difficult to "garner the number of signatures necessary to place the candidate or issue on the ballot..." *Meyer*, 486 U.S. at 423; *see also Am. Constitutional Law Found.*, 525 U.S. at 195.

**ii. <u>New York Federal And State Courts Have Applied Strict Scrutiny To New York's Witness Residency Requirement In Party Designating Petitions.</u>**

Following these two Supreme Court decisions, the U.S Court of Appeals for the Second Circuit declared unconstitutional the witness residency requirement contained in designating petition statute—N.Y. Elec. Law § 6-132(2)—precisely as Chief Justice Rehnquist had predicted. *See Am. Constitutional Law Found.*, 525 U.S. at 232 & n.3 (Rehnquist, C.J., dissenting); *see also Lerman v. Bd. of Elections*, 232 F.3d 135, 145 (2d Cir. 2000) *cert. denied N.Y. State Bd. of Elections v. Lerman*, 533 U.S. 915 (2001).[1]

[1] In addition to the federal and state courts within the Second Circuit that have declared unconstitutional requirements similar to New York's residency requirement, these restrictions have been declared unconstitutional in courts across the country. *See, e.g., Libertarian Party of Virginia v. Judd*, 718 F.3d 398 (4th Cir. 2013) (applying strict scrutiny to Virginia residency requirement); *Yes on Term Limits, Inc. v. Savage*, 550 F.3d 1023 (10th Cir. 2008) (applying strict scrutiny to Oklahoma prohibition on nonresident circulators of initiative petitions); *Nader v. Blackwell*, 545 F.3d 459 (6th Cir. 2008) (applying strict scrutiny to Ohio ban on nonresidents circulating nominating petitions); *Nader v. Brewer*, 531 F.3d 1028 (9th Cir. 2008) (applying strict scrutiny to residency provisions relating to nominating petitions and circulator-witnesses).

In *Lerman*, the plaintiff was a witness to party designating petitions in the 1999 New York City Council elections. The plaintiff served as a witness for the Independence Party candidate for the 50th City Council district where the candidate needed to obtain 38 valid signatures for his name to appear on the ballot. *Lerman*, 232 F.3d at 139. However, the plaintiff resided in the 49th City Council district and N.Y. Elec. Law § 6-132(2) required that for the plaintiff to serve as a witness to party designating petitions, she had to reside in the "political subdivision in which the office or position is to be voted for." *Lerman*, 232 F.3d at 139. The New York City Board of Elections therefore ruled that all 58 signatures that the plaintiff witness had witnessed were invalid and the candidate's name did not appear on the ballot. *See id*.

The Second Circuit reversed the district court's grant of defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) concluding that the witness requirement in the party designating petition was unconstitutional on its face. *See id* at 139, 145, 153. The court first noted that the New York State Board of Elections and the New York City Board of Elections had entered into a stipulated consent order where the judge concluded that the witness residency requirement in N.Y. Elec. Law § 6-132(2) placed "an undue burden on the right to vote under the First Amendment." *See Lerman*, 232 F.3d at 140 (quoting *Molinari v. Powers*, 82 F. Supp. 2d 57, 69 (E.D.N.Y. 2000) (Korman, C.J.)).

The court then conducted its own analysis of the party designating witness requirement. *First*, the court concluded that strict scrutiny was warranted. *Lerman*, 232 F.3d at 149. The court reached this conclusion because the witness requirement for party designating petitions restricts "core political speech" and "severely burdens political speech by drastically reducing the number of persons...available to circulate petitions." *Id*.

at 146 (alterations in the original) (quoting *Am. Constitutional Law Found.*, 525 U.S. at 193). The witness residency requirement caused a "shrinking pool" problem where the potential petition signatories decrease "as the petitioning period progresses, whereby those voters who already have signed the petition of another candidate are no longer available to sign another petition." *Id*. at 148. It becomes nearly impossible to identify and obtain even a few signatures. *See id*. Therefore, even though the candidate in *Lerman* needed only 38 valid signatures, the First Amendment rights of plaintiff were still severely burdened because the candidate was confined to using only a small subset of designating petition witnesses to convey the candidate's message. *See id*. Furthermore, the witness residency requirement infringed on plaintiffs' political association rights that are also at the core of the First Amendment. *See id.*

Then the court analyzed the justifications for the law, rejecting each. New York first contended that the residency requirement ensured the integrity of the election and prevented fraud; that the residency requirement guarantees that the candidate has a modicum of support before accessing the ballot; and third, the residency requirement prevents non-residents from imposing the cost of the primary on the district. *Id*. at 149. The Second Circuit ruled that the witness residency requirement "does not bear even a *rational* relationship to any of these three justifications..." *Id.* (emphasis in the original).

Although the first interest is compelling in the abstract, the defendants did not establish that non-resident petition witnesses threatened the integrity and brought fraud upon the elections. The court refused to impose a substantial burden on First Amendment rights "without insisting that the defendants 'do more than simply posit the existence of the disease sought to be cured.'" *Id*. at 150 (citing and quoting *Turner Broad. Sys. v. FCC*, 512

U.S. 622, 664 (1994)). The court also rejected New York's argument that the residency requirement is necessary because they have "personal familiarity" with the signers of the petition and therefore they will prevent fraud. *Id*. This argument fails because New York removed the requirement that witnesses know the signatory and because New York now uses signature imaging technology to check signatures against those held by the county boards of election on the signatory's voter registration. *Id*.

The court rejected New York's second interest—requiring that the candidate have a modicum of support—because that interest was already advanced "by the requirement that candidates obtain a minimum number of signatures by district residents." *Id*. at 151. The court rejected New York's third interest—the prevention of non-residents imposing costs upon district residents—because if the candidate obtains enough resident signatures, the candidate's name will appear on the ballot regardless of non-resident support. *See id*. at 152. Furthermore, there is no legitimate interest in fencing out "non-residents' political speech—and to prevent both residents and non-residents from associating for political purposes across district boundaries." *Id*. The non-resident notary exception also undermined the thrust of New York's argument. *Id*. Finally, the court ruled that New York's argument that plaintiff could enter the district and speak about candidates she favors and does not favor was of no constitutional importance because it is irrelevant to the fact that the statute still unconstitutionally restricts First Amendment speech. *Id*. Thus, the Second Circuit declared the witness residency requirement for party designating petitions facially unconstitutional. *See id*. at 153.

Similarly, in *LaBrake v. Dukes*, the New York Court of Appeals also declared unconstitutional the witness residency requirement in party designating petitions. *See*

*LaBrake v. Dukes*, 96 N.Y.2d 913, 758 N.E.2d 1110 (N.Y. 2001). There, the court agreed with *Lerman* that circulating petitions constituted core political speech. *Id*. at 914, 758 N.E.2d at 1111. Because the residency requirement imposed restrictions on core political speech, the court subjected the residency requirement to strict scrutiny. *Id*.

The Court of Appeals also rejected New York's arguments for a compelling interest. The court first rejected the argument that the requirement was needed for subpoena purposes. But this interest was satisfied because the statute also requires that witnesses list their address and that witnesses be a resident of the State. *Id*. at 915. The court then rejected New York's argument that the witness residency requirement prevents intrusions by outsiders because New York "presented no evidence that insularity was any part of the basis for enactment of the witness residency requirement..." *Id*. Even if it were, the court continued, the interest was not legitimate, much less compelling because the statute permits non-resident notaries to act as witnesses. *Id*., 758 N.E.2d at 1111-12.

**iii. New York Federal And State Courts Have Applied Strict Scrutiny To New York's Witness Residency Requirement In Independent Nominating Petitions.**

The U.S. District Court for the Eastern District of New York declared that the witness residency requirement for witnesses of independent nominating petitions was facially unconstitutional. *See* N.Y. Elec. Law § 6-140(1)(b); *Chou v. N.Y. State Bd. of Elections*, 332 F. Supp. 2d 510, 516 (E.D.N.Y. 2004). There, the plaintiffs were members of the New York Green Party, a party that had lost its status as a state party, requiring that its candidates abide by the independent nominating petition statutes. *See Chou*, 332 F. Supp.2d at 511-12. Two plaintiffs were candidates for the New York State Assembly and Senate and the other two plaintiffs were registered voters and Green Party members who

wanted to serve as witnesses to the candidates' petitions, but the residency requirement in N.Y. Elec. Law § 6-140(1)(b) prohibited these two plaintiffs from witnessing petitions because they were not residents of the respective Assembly and Senate district. *Id*. at 511.

The court noted that if the witness is ineligible then all of the signatures on the petitions are invalid. *See id*. at 512. Then, the court noted that the Assembly candidate plaintiff needed 696 signatures and the Senate candidate needed 3,000 signatures. *See id*. at 513. Furthermore, voters can only sign one independent nominating petition for each office, thus, the candidate plaintiffs faced a "shrinking pool of eligible petition signatories." *Id*.

The court ruled that the "petition circulation activity at issue in this case is identical to that in *Lerman*" and further stated that the residency requirement in *Lerman* is identical to the requirement here. *See id*. at 514. The residence requirement "indisputably *prevents* a large number of potential witnesses from carrying their political message to voters and thus inhibits effective political association." *Id*. at 515 (emphasis in the original). For minor party candidates "parting with one or two avid circulators could significantly impact their campaigns." *Id*. (quoting *Lerman*, 232 F.3d at 147). The court therefore subjected the witness residency requirement to strict scrutiny. *Id*. at 516.

The court rejected the argument that independent candidates show some modicum of support because that interest is already satisfied with the minimum number of signatures requirement. *Id*. The court also reminded defendants that the county boards of election have statewide subpoena power and only New York residents could serve as petition witnesses. These tools act to protect the integrity of New York's election process. *See id*.

Thus the Court entered a declaratory judgment declaring that N.Y. Elec. Law § 6-140(1)(b) is unconstitutional on its face and permanently enjoined defendants from enforcing it. *See id*.

The New York Court of Appeals also declared N.Y. Elec. Law § 6-140(1)(b) unconstitutional in *McGuire v. Gamache*, 5 N.Y.3d 444, 840 N.E.2d 107 (N.Y. 2005). There, the dispute arose in a proceeding seeking to invalidate independent nominating petitions because the witness had crossed out—without explanation—the phrase "and I am also duly qualified to sign the petition. *McGuire*, 5 N.Y.3d at 446, 840 N.E.2d at 109. During the hearing before the New York Supreme Court, counsel for the candidate whose petitions were challenged represented that the reason for the crossed out phrase was because the witness did not reside in the district where the petitions were circulated. *Id*.

The court ruled that because the witness residency requirements for independent nominating petitions are identical to the witness residency requirement for party designating petitions, "the rationale of *La Brake* applies with equal force to the political speech rights of persons circulating independent nominating petitions." *Id*. at 447, 840 N.E.2d at 110. In the end, however, the Court of Appeals declared the petitions invalid because the petition sheets did not state the reason for the crossing out of that phrase. *Id*. at 447-48, 840 N.E.2d at 110. The Court of Appeals concluded stating that the witness statements for N.Y. Elec. Law §§ 6-132, 6-140 must be revised and the Court of Appeals urged the State Board of Elections to do whatever was necessary to amend the witness statement forms. *See id*. at 449, 840 N.E.2d at 111.

**B. <u>New York Law Mandating That Witnesses To Independent Nominating Petitions And Party Designating Petitions Reside In The Village In Which The Candidate Is Campaigning For Public Office Violates Plaintiffs' Core Political Speech Rights.</u>**

**i. <u>The Village Independent Nominating Petition Statute.</u>**

To access the ballot for village elections, New York requires that candidates obtain a certain number of signatures—in ink—from village residents who are registered voters. N.Y. Elec. Law § 15-108(4) (Consol. 2017). Here, because the Village of North Syracuse has a population of 6,800,[2] candidates must obtain 100 signatures. Similarly, because the Village of Liverpool has a population of 2,347[3], candidates must obtain 50 signatures. *See* N.Y. Elec. Law §§ 15-108(6), 6-206(4). New York imposes the following requirements on witnesses of independent nominating petitions: witnesses must be New York residents, registered voters, and residents of the village where the witness wishes to circulate petitions, unless the witness is also a notary public. *See* N.Y. Elec. Law §§ 6-206(2), 15-108(4) (Consol. 2017).

**ii. <u>The Village Party Designating Statute.</u>**

Similarly, to access the ballot for a party primary election, New York requires that the candidates obtain a certain number of signatures, in ink, from "residents of the village who are registered to vote with the appropriate county board of elections at the time of signing and who are enrolled in such political party." N.Y. Elec. Law §§ 6-204(1), 15-108(3)(a). Here, in the Village of North Syracuse, Independence Party of New York candidates must obtain 13 signatures. Similarly, in the Village of Liverpool, Independence

---

[2] *See Central New York Regional Planning & Development Board*, Onondaga County, *available at* http://www.cnyrpdb.org/data/pop/onondaga.asp (last visited March 21, 2017).
[3] *See id*.

Party of New York candidates must obtain 5 signatures. *See* N.Y. Elec. Law § 6-204(2) (stating that the number of signatures required is "five percent of the number of enrolled voters of the party residing in the village."); *see also id*. § 15-108(3)(b). New York imposes the following requirements on witnesses to party designating petitions: witnesses must be New York residents, registered voters, registered members of the party, and residents of the village where the witness wishes to circulate petitions, unless the witness is also a notary public. N.Y. Elec. Law §§ 6-204(1), 15-108(3)(a).

**iii. The County Boards Of Election And The Village Clerks Have The Power To Invalidate Petitions.**

The Onondaga County Board of Elections has the authority to invalidate every single signature witnessed by a non-village resident. *Id*. § 6-212 (county board has the authority to issue determinations to challenges to the validity of village petitions); *id.* § 15-108(10) (vesting the county boards of elections with the authority to determine the validity of objections and specifications). The clerks of the Village of North Syracuse and the Village of Liverpool also have the authority to invalidate every single signature witnessed by a non-village resident. The village clerk has the authority to determine whether the nominating petitions are facially valid. Because the witness affidavit requires the witness to declare whether their residence is located in the particular village, the village clerk has the authority to declare a nominating petition invalid. *Falcone v. Manupella*, 159 A.D.2d 795, 795 (N.Y. App. Div. 1990) (citing N.Y. Elec. Law § 15-124(1)); *see also* N.Y. Elec. Law §§ 6-204(1); 15-108(3)(a); 6-206(1); 15-108(4).

**iv. The Witness Requirement In The Party Designating Petition And The Independent Nominating Petition Violate Plaintiffs' First Amendment Rights.**

Plaintiffs, Matthew Parish, Thomas Jaccarino, and Tom Connolly want to serve as witnesses to both independent nominating petitions and party designating petitions in the upcoming June 20, 2017 elections in the Village of North Syracuse and the Village of Liverpool. *See* (Parish Decl. ¶¶ 4-5); (Jaccarino Decl. ¶¶ 4-5); (Connolly Decl. ¶¶ 4-5). However, because of the village residency requirement in N.Y. Elec. Law §§ 6-204(1), 6-206(2), 15-108(3), and 15-108(4), Plaintiffs have not circulated any petitions in either the Village of North Syracuse or the Village of Liverpool. (Parish Decl. ¶ 5); (Jaccarino Decl. ¶ 5); (Connolly Decl. ¶ 5). If this Court were to declare the witness residency requirement unconstitutional and enjoin enforcement of the requirement, Plaintiffs would circulate independent nominating petitions and party designating petitions in these two villages. (Parish Decl. ¶ 6); (Jaccarino Decl. ¶ 6); (Connolly Decl. ¶ 6).

Furthermore, the First Amendment rights of the Independence Party of New York and its members are harmed because although the Party has over half a million members statewide, the party is limited to using only 243 of those members in North Syracuse and only 84 members in Liverpool. (Connolly Decl. ¶¶ 9-10, 12). This drastically reduces the "number of persons...available to circulate petitions" severely burdening Plaintiffs' First Amendment rights. (Connolly Decl. ¶ 13); *see Lerman*, 232 F.3d at 139, 147, 149 (stating that the 50th City Council district had 760 Independence Party members but 170,000 members statewide and this disparity restricts "core political speech" and severely burdened plaintiffs speech "by drastically reducing the number of persons...available to circulate petitions.") (quoting *Am. Constitutional Law Found.*, 525 U.S. at 193); *Chou*, 332 F. Supp. 2d at 514-15 (declaring that the independent nominating petition witness residency requirement imposes a severe burden on speech because it restricts core political

speech and because it reduces "the number of people available to circulate petitions and precluding candidates from using witnesses of their choosing."). Because the witness residency requirement contained in N.Y. Elec. Law §§ 6-204(1), 6-206(2), 15-108(3), and 15-108(4) severely burdens Plaintiffs' free speech rights, it is subject to strict scrutiny. *See, e.g.*, *Lerman*, 232 F.3d at 149.

**v. <u>This Court Must Review These Statutes Under Strict Scrutiny</u>**

Petition circulation, regardless if it is at the presidential level or at the local level, is core political speech. *See Lerman*, 232 F.3d at 146 (petition circulation in city council election); *Molinari*, 82 F. Supp. 2d at 60 (election of delegates to national party convention to nominate candidate for President of the United States). Restrictions on core political speech impose a severe burden on speech and therefore courts must subject these restrictions to strict scrutiny. *See Lerman*, 232 F.3d at 149; *see also id*. at 146 (citing and quoting *Am. Constitutional Law Found*., 525 U.S. at 208 (Thomas, J., concurring)); *see also Am. Constitutional Law Found*., 525 U.S. at 192 n.12.

The burdens on Plaintiffs' First Amendment speech rights are severe. The Independence Party of New York has 501,738 members statewide but only 243 members in North Syracuse and 84 members in Liverpool. *See* (Connolly Decl. ¶¶ 9-10, 12). This fact alone drastically reduces the number of speakers the Independence Party of New York may use in promoting its message in the Villages of North Syracuse and Liverpool. *Compare with Lerman*, 232 F.3d at 139, 147, 149; *Chou*, 332 F. Supp. 2d at 514-15. This Court therefore must subject the witness residency requirement contained in N.Y. Elec. Law §§ 6-206(2), 15-108(4) to strict scrutiny.

**vi. <u>New York Does Not Have A Compelling Interest.</u>**

To survive strict scrutiny, the Defendants must demonstrate that the New York legislature identified an actual problem that its witness residency requirement for party designating and independent nominating petitions was necessary to resolve. *See Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 799 (2011); *Playboy Entm't Grp.*, 529 U.S. at 820-23 (stating that Congress did not sufficiently prove a nationwide problem to justify its nationwide daytime speech ban); *cf. Ashcroft v. ACLU,* 542 U.S. 656, 666 (2004) (stating that at the preliminary injunction stage in a challenge to the federal Child Online Protection Act, the government bears the burden of proving that its least restrictive means are more effective than the plaintiffs' proposals); *see also Playboy Entm't Grp.*, 529 U.S. at 816 ("[W]hen the government restricts speech, the government bears the burden of proving the constitutionality of its actions."). The interest asserted must be genuine and not a post-hoc rationalization in response to litigation. *United States v. Virginia*, 518 U.S. 515, 533 (1996) ("The justification must be genuine, not hypothesized or invented post hoc in response to litigation."). Therefore, to demonstrate that an interest is compelling is a demanding standard. *See Brown*, 563 U.S. at 799.

*First*, the Second Circuit in *Lerman* ruled that the similar residence requirement in N.Y. Elec. Law § 6-132(2) served "no essential function." *Lerman*, 232 F.3d at 145 (quoting *Rockefeller v. Powers*, 917 F. Supp. 155, 161 (E.D.N.Y. 1996), *aff'd*, 78 F.3d 44, 46 (2d Cir. 1996)). Additionally, the U.S. District Court for the Eastern District of New York ruled that the residency requirement for independent nominating petitions contained in N.Y. Elec. Law § 6-140(1)(b) was not supported by a compelling interest. *Chou*, 332 F. Supp. 2d at 516 ("In sum, Section 6-140(1)(b) severely burdens plaintiffs' free speech and

associational rights by limiting the number of people who can witness petitions *without promoting any compelling state interest*.") (emphasis added).

*Second*, although the Second Circuit ruled that New York's asserted interest, "ensuring integrity and preventing fraud in the electoral process—is unquestionably compelling", the court ultimately rejected the interest because New York "failed to suggest any meaningful relationship between the section 6-132(2) witness residence requirement and their interest in protecting the integrity of the signature collection process." *Lerman*, 232 F.3d at 150. The court stated that New York's asserted interest was an abstract interest that it posited without showing a need for the regulation or showing how the regulation advanced such interest. *See id*. at 149-50. Furthermore, the court noted that the "potential dangers to the integrity of the electoral process are more remote during the signature collection process than at the actual time of balloting on election day." *See id*. at 149 (citing *Am. Constitutional Law Found*., 525 U.S. at 203-04). Furthermore, New York's requirement that witnesses must be New York residents and registered voters coupled with all of the county board of elections' authority to issue statewide subpoenas, proves New York's interest is already served through these less burdensome requirements. *Lerman*, 232 F.3d at 150.

The *Lerman* court also rejected the asserted need for the residency requirement to ensure that the witness was familiar with the signatory. *See id*. This interest is undermined because New York ceased requiring that petition witnesses have personal familiarity with the signatory. *See id*. The justification is also dubious because the county boards of election have signature verification technology where the petition signature is matched with the signature on the voter registration roles. *See id*.

Moreover, the *Lerman* court also rejected the justification that the witness residency requirement demands that the candidate have a modicum of support. This justification is adequately met by the petition signature requirement. *See id*. at 151.

Finally, the *Lerman* court rejected the argument that the witness residency requirement was necessary to prevent outsiders from imposing costs on district residents. *See id*. at 152. This was rejected because it violated the First Amendment's "purpose of ensuring the widest possible dissemination of information from diverse and antagonistic sources." *Id* (internal quotation marks omitted).

It is the Defendants' burden to assert and justify a compelling interest. *Cf. Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004); *see also Playboy Entm't Grp.*, 529 U.S. at 816. Defendants are unable to justify any such interest.

**vii. <u>Even If Defendants Do Have A Compelling Interest, The Witness Residency Requirement Is Not Narrowly Tailored.</u>**

Even if Defendants were able to assert and justify a compelling interest, that interest is not narrowly tailored. "A statute is narrowly tailored if it targets and eliminates no more than the exact source of the 'evil' it seeks to remedy." *Frisby v. Schultz*, 487 U.S. 474, 485 (1988). The legislation cannot be "underinclusive," meaning that it cannot leave appreciable damage to the government's purported interest unprohibited. *See Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2232 (2015). Nor can it be overinclusive by "unnecessarily circumscrib[ing] protected expression." *Republican Party of Minn. v. White*, 536 U.S. 765, 775 (2002) (quoting *Brown v. Hartlage*, 456 U.S. 45, 54 (1982)). Again, it is New York's burden to prove that its means to achieve its asserted interests are narrowly tailored. *See Playboy Entm't Grp.*, 529 U.S. at 816.

Here, New York's witness residency requirement for independent nominating petitions and party designating petitions is not narrowly tailored because it is both underinclusive and overinclusive. It is underinclusive because New York still permits non-resident notaries to witness signatures. *See Molinari*, 82 F.Supp.2d at 74 ("If the asserted interest was to limit petition circulators to residents of the congressional district, the notary exception cannot be explained."). Additionally, the witness residency requirement is overinclusive because the state residency requirement for party designating petitions and registered voter requirement already satisfy New York's asserted interest. *See Lerman*, 232 F.3d at 150. In fact, even if this Court were to declare the witness residency requirement unconstitutional, New York's dual voter registration and state residency requirements are more burdensome than Colorado's where the state residency requirement was not challenged but the voter registration requirement was declared unconstitutional. *See Am. Constitutional Law Found.*, 525 U.S. at 197.

Even if New York has a compelling interest, the witness residency requirement fails strict scrutiny because it is not narrowly tailored.

**viii. <u>Conclusion.</u>**

The witness requirements contained in the village party designating petition statute and the village independent nominating petition statute restricts core political speech. They further drastically reduce the number of speakers available to spread the message of the Independence Party and independent candidates. The witness residency requirement is therefore subject to strict scrutiny and the requirement fails strict scrutiny. This Court should find Plaintiffs have established a substantial likelihood of success on the merits.

## II. <u>PLAINTIFFS WILL SUFFER IRREPARABLE HARM ABSENT THE ISSUANCE OF AN INJUNCTION.</u>

When a complaint alleges a violation of plaintiff's First Amendment rights, the irreparable harm prong is satisfied. *Green Party v. N.Y. State Bd. of Elections*, 389 F.3d 411, 418 (2d Cir. 2004) (*citing Elrod,* 427 U.S. at 373); *see also Mitchell v. Cuomo,* 748 F.2d 804, 806 (2d Cir. 1984) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."); *see also Donohue v. Paterson,* 715 F. Supp. 2d 306, 314-15 (N.D.N.Y 2010) (Kahn, J.) ("Irreparable harm is often presumed where a constitutional injury is at stake...While merely asserting a constitutional injury is insufficient to automatically trigger a finding of irreparable harm...where, as here, the constitutional deprivation is convincingly shown and that violation carries non-compensable damages in addition to monetary damages, a finding of irreparable harm is warranted.") (internal citations omitted); *Kermani v. N.Y. State Bd. of Elections*, 487 F. Supp. 2d 101, 107 (N.D.N.Y 2006) (Kahn, J.) ("In matters involving *allegations or claims* of First Amendment violations, irreparable harm may be presumed...the presumption disappears if the movant does not satisfy the [likelihood of success on the merits prong].") (emphasis added);[4] *Deferio*, 193 F. Supp. 3d at 130 ("First, where a plaintiff alleges injury from a rule or regulation that directly limits speech, the irreparable nature of the harm may be presumed.") (internal quotation marks and alterations omitted) (quoting *Bronx Household of Faith v. Bd. of Educ*., 331 F.3d 342, 349 (2d Cir. 2003)). This is so because "The loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury." *N.Y. Progress & Prot. PAC*,

[4] *Citing Bad Frog Brewery, Inc. v. N.Y. State Liquor Auth.*, 1996 U.S. Dist. LEXIS 18068, No. 96-CV-1668 (FJS), 1996 WL 705786, at *2 & n.3 (N.D.N.Y. Dec. 5, 1996) (Scullin, J.) ("Because the gravamen of this action alleges the violation of the plaintiff's First Amendment rights, irreparable harm is presumed. However...if the movant fails to clearly show a loss of Constitutional rights on the second prong of the preliminary injunction standard, the presumption is extinguished.").

733 F.3d at 486 (quoting *Elrod*, 427 U.S. at 373). In the First Amendment context, therefore, where a plaintiff successfully demonstrates a likelihood of success on the merits, that is often the dispositive factor in the preliminary injunction analysis. *See id*. at 488 ("Consideration of the merits is virtually indispensable in the First Amendment context, where the likelihood of success on the merits is the dominant, if not the dispositive, factor.").

Here, with each passing day, Plaintiffs' irreparable harm swells because "[t]iming is of the essence in politics and a delay of even a day or two may be intolerable." *N.Y. Progress & Prot. PAC*, 733 F.3d at 486. Plaintiffs want to witness party designating and independent nominating petitions in village elections. The beginning of the period to file party designating petitions—April 10, 2017—is looming. *See* N.Y. Elec. Law § 15-108(7)(d). The last day to file party designating petitions is April 17, 2017. *See id*. Furthermore, the beginning of the period to circulate independent nominating petitions—April 4, 2017—is also looming. *See id*. § 15-108(9). The last day to file independent nominating petitions is May 16, 2017. *See id*. § 15-108(8)(a). Plaintiffs want to circulate both independent nominating petitions and party designating petitions in the June 20, 2017 elections in the Village of North Syracuse and the Village of Liverpool. (Parish Decl. ¶¶ 4-5); (Jaccarino Decl. ¶¶ 4-5); (Connolly Decl. ¶¶ 4-5). They are prohibited from doing so, however, because New York law requires that they be residents of North Syracuse and Liverpool. (Parish Decl. ¶ 6); (Jaccarino Decl. ¶ 6); (Connolly Decl. ¶ 6). Plaintiffs irreparable harm is further compounded with New York's requirement that party designating petitions face a "shrinking pool" problem as the petition period progresses because village residents may only sign one designating petition. *Lerman*, 232 F.3d at 147-

48. An injunction is therefore necessary to allow Plaintiffs to exercise their First Amendment rights ahead of the village elections. *N.Y. Progress & Prot. PAC*, 733 F.3d at 486 (quoting *Elrod*, 427 U.S. at 373).

## III. THE BALANCE OF THE HARMS TIPS DECIDEDLY IN PLAINTIFFS' FAVOR.

When considering this prong of the injunction analysis, this Court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24.

Here, New York's party designating and independent nominating petition residency requirement prohibits Plaintiffs from exercising core political speech rights in circulating nominating and designating petitions on behalf of their favorite candidate. *See Am. Constitutional Law Found*., 525 U.S. at 186. Furthermore, it also violates their freedom of association right prohibiting them from associating with village candidates. *Lerman*, 232 F.3d at 146-47. In violating Plaintiffs' First Amendment rights, it harms the candidates because it reduces the number of persons who can circulate petitions on the candidate's behalf. *Id*. at 147-48 (noting that because signatories may only sign one designating petition, candidates face a "shrinking pool" problem as the petition period progresses). This violation of Plaintiffs' constitutional rights is substantial. *See N.Y. Progress & Prot. PAC*, 733 F.3d at 488 (characterizing New York's statute limiting political contribution amounts as significant because "Every sum that a donor is forbidden to contribute to NYPPP because of this statute reduces constitutionally protected political speech."); *Deferio*, 193 F. Supp. 3d at 130.

On the other side of the ledger, the requested injunction merely requests that the Defendants cease enforcing the residential requirement in the village designating and

independent nominating petitions, a requirement that is unconstitutional. *See N.Y. Progress & Prot. PAC*, 733 F.3d at 488 ("[T]he Government does not have an interest in the enforcement of an unconstitutional law.") (quoting *Am. Civil Liberties Union v. Ashcroft*, 322 F.3d 240, 247 (3d Cir. 2003)). Furthermore, the injunction does not disrupt or interfere with the village election machinery in a manner that outweighs Plaintiffs' irreparable harm. *See N.Y. Progress & Prot. PAC*, 733 F.3d at 489. The balance of the equities therefore tips decidedly in Plaintiffs' favor.

## IV. GRANTING THE INJUNCTION IS IN THE PUBLIC'S INTEREST.

"[S]ecuring First Amendment rights is in the public interest." *See N.Y. Progress & Prot. PAC*, 733 F.3d at 488. In fact, "it is decidedly against the public interest to abide the continued enforcement of an unconstitutional policy or law." *Deferio*, 193 F. Supp. 3d at 130 (citing *N.Y. Progress & Prot. PAC*, 733 F.3d at 488)). Several courts have similarly agreed that it is in the public interest to prohibit the continued enforcement of an unconstitutional law. *See, e.g.*, *New York v. Cain*, 418 F. Supp. 2d 457, 473 (S.D.N.Y. 2006) (Cote, J.) ("There can be no irreparable harm to a municipality when it is prevented from enforcing an unconstitutional statute because it is always in the public interest to protect First Amendment liberties."). Absent an injunction prohibiting Defendants enforcement of the witness residency requirement, both Plaintiffs here and society as a whole will be irreparably harmed because they will forgo constitutionally protected speech rather than risk the consequences. *Cf. Virginia v. Hicks*, 539 U.S. 113, 119 (2003).

Plaintiffs have demonstrated *supra* that New York's witness residency requirement to party designating and independent nominating petitions in village elections prohibits core political speech that is protected under the First Amendment to the U.S. Constitution.

The public interest therefore rests in enjoining the Defendants from continuing to enforce an unconstitutional law.

**CONCLUSION**

For the foregoing reasons, Plaintiffs request that this Court enjoin all Defendants, their agents, and successors from enforcing N.Y. Elec. Law §§ 6-204(1), 6-206(2), 15-108(3), and 15-108(4).

DATED: March 28, 2017
Respectfully submitted,

/s/ Timothy J. Lambrecht
Timothy J. Lambrecht, Esq. (510390)
The Wladis Law Firm, P.C.
6312 Fly Road
Syracuse, New York 13057
Phone: 315-445-1700
Fax: 315-251-1073
tlambrecht@wladislawfirm.com

Jason Torchinsky (VA 47481)*
Shawn Toomey Sheehy (VA 82630)*
Steven P. Saxe
Phil M. Gordon
HOLTZMAN VOGEL
JOSEFIAK TORCHINSKY PLLC
45 North Hill Drive, Suite 100
Warrenton, Virginia 20186
Phone: 540-341-8808
Fax: 540-341-8809
jtorchinsky@hvjt.law
ssheehy@hvjt.law
spsaxe@hvjt.law
pgordon@hvjt.law

*pro hac vice applications pending

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing has been filed with the Clerk via the CM/ECF system that has sent a Notice of Electronic filing to all counsel of record.

/s/ Timothy J. Lambrecht
Timothy J. Lambrecht, Esq.