**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**MATTHEW PARISH, THOMAS JACCARINO,**
**TOM CONNOLLY, and THE INDEPENDENCE PARTY**
**OF NEW YORK,**

                             **Plaintiffs,**

**v.**                                                            **5:17-cv-344 (BKS/DEP)**

**PETER S. KOSINSKI, in his official capacity as Co-Chair**
**of the New York State Board of Elections, DOUGLAS A.**
**KELLNER, in his official capacity as Co-Chair of the New**
**York State Board of Elections, ANDREW J. SPANO, in his**
**official capacity as Commissioner of the New York State**
**Board of Elections, GREGORY P. PETERSON, in his official**
**capacity as Commissioner of the New York State Board of**
**Elections, DUSTIN M. CZARNY, in his official capacity as**
**Commissioner of the Onondaga County Board of Elections,**
**MICHELE L. SARDO, in her official capacity as**
**Commissioner of the Onondaga County Board of Elections,**
**DIANNE KUFEL, in her official capacity as Clerk of the**
**Village of North Syracuse, MARY ELLEN SIMS, in her**
**official capacity as Clerk of the Village of Liverpool,**

                             **Defendants.**
_____

**Appearances of Counsel:**

*For Plaintiffs*:

Timothy J. Lambrecht
The Wladis Law Firm, P.C.
6312 Fly Road
East Syracuse, New York 13057

Jason Torchinsky
Shawn Toomey Sheehy
Steven P. Saxe
Phillip M. Gordon
Holtzman Vogel Josefiak Torchinsky PLLC
45 North Hill Drive, Suite 100
Warrenton, Virginia 20186

*For Defendants Peter S. Kosinski, Douglas A. Kellner, Andrew J. Spano and Gregory P. Peterson*:

Eric T. Schneiderman
Attorney General of the State of New York
Aimee Paquette, Assistant Attorney General
615 Erie Boulevard West, Suite 102
Syracuse, New York 13204

*For Defendants Dustin M. Czarny and Michele L. Sardo*:

John E. Heisler, Jr.
County of Onondaga Department of Law
John H. Mulroy Civic Center, 10th Floor
421 Montgomery Street
Syracuse, New York 13202

*For Defendant Mary Ellen Sims*:

John R. Langey
Elizabeth A. Hoffman
Costello, Cooney & Fearon, PLLC
500 Plum Street, Suite 300
Syracuse, New York 13204

**Hon. Brenda K. Sannes, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

On March 24, 2017, Plaintiffs Matthew Parish, Thomas Jaccarino, Tom Connolly, and

The Independence Party of New York filed a Complaint against Defendant New York State

Board of Elections officials, Onondaga County Board of Elections officials, and Village of

Liverpool and North Syracuse officials under 42 U.S.C. § 1983 alleging that N.Y. Elec. Law §§

6-204(1),[1] 6-206,[2] 15-108(3), and 15-108(4),[3] which require witnesses to party designating

---

[1] Section 6-204 governs party designations for elective village offices and specifies that designations be made on a designating petition and be witnessed by a village resident.  N.Y. Elec. Law § 6-204(1).

[2] Section 6-206 governs independent nominations for elective village offices and specifies that nominations be made on a petition and witnessed by a village resident.  N.Y. Elec. Law § 6-206.  During oral argument the Court asked Plaintiffs' counsel whether they were challenging § 6-206(1) or § 6-206(2), which Plaintiffs had cited in their

2

petitions and independent nominating petitions for village office candidates to be village

residents ("witness residence requirement"), burden their First Amendment rights to freedom of

speech and association. (Dkt. No. 1). On March 28, 2017, Plaintiffs – who are not residents of

the Villages of Liverpool or North Syracuse and who wish to witness petitions – filed an

emergency motion for a preliminary injunction under Fed. R. Civ. P. 65(a) seeking to prohibit

Defendants from enforcing the witness residence requirement in connection with the June 20,

2017 village elections. (Dkt. No. 5). Plaintiffs also requested that the Court consolidate a

hearing on the motion for a preliminary injunction with a trial on the merits under Rule 65(a)(2).

(*Id.*). On March 31, 2017, the Court set an expedited briefing schedule. (Dkt. No. 12). All

Defendants except Defendant Dianne Kufel[4] opposed Plaintiffs' motion. (Dkt. Nos. 23, 25–28).

On April 28, 2017, the Court held oral argument. The Court has considered the parties'

memoranda, documentary evidence, declarations, and affidavits.[5] What follows are the Court's

findings of fact and conclusions of law in accordance with Rule 52(a)(2). For the following

reasons, Plaintiffs' motion for a preliminary injunction is granted.[6]

---

papers. Although Plaintiffs responded, after reviewing the statute, that they were challenging § 6-206(2), it is unclear whether that subsection concerns the signature of a notary public or the witness residence requirement. The Court therefore construes Plaintiffs' application as a challenge to the witness residence requirement in § 6-206, without citation to subsection.

[3] Section 15-108 governs the designation and nomination of candidates for elective village offices.

[4] Defendant Kufel has not responded to the motion or otherwise appeared in this action.

[5] "An evidentiary hearing is not required when the relevant facts either are not in dispute or have been clearly demonstrated at prior stages of the case." *Charette v. Town of Oyster Bay*, 159 F.3d 749, 755 (2d Cir. 1998) (citing *Republic of the Philippines v. New York Land Co.*, 852 F.2d 33, 37 (2d Cir. 1988)). At oral argument, the parties did not identify any factual disputes warranting an evidentiary hearing. The Court agrees; there are no disputed facts requiring resolution at this stage.

[6] Plaintiffs have requested that the Court consolidate the hearing on their motion with a trial on the merits. (Dkt. No. 5-1, p. 1). Under Rule 65(a)(2), "[b]efore or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing." "The court must give the parties notice of such consolidation sufficient to give them an adequate opportunity to present their case." *Abraham Zion Corp. v. Lebow*, 761 F.2d 93, 101 (2d Cir. 1985); *see also Woe by Woe v. Cuomo*, 801 F.2d 627, 629 (2d Cir. 1986) ("The giving of formal notice ensures both that a party may avail himself of every opportunity to present evidence pertinent to his position and that all genuine issues of fact are before the court."). Rule 65(a)(2) accords the district court "broad discretion" in determining whether to consolidate; the Second Circuit has noted that an order of consolidation "will not be overturned on appeal absent a showing of substantial prejudice in the sense that a party

## II.    FINDINGS OF FACT

### A.    Plaintiffs

Plaintiff New York Independence Party "is a recognized political party under New York State Election Law." (Dkt. No. 1, ¶ 20). The Independence Party committee rules allow nominations for village offices through a primary or a caucus. (Dkt. No. 23-2, p. 7). The Independence Party may, for example, choose to proceed via caucus if there is "a Party member in the village serving as an election chairperson." (Dkt. No. 29, p. 9–10). However, neither the Village of North Syracuse nor the Village of Liverpool "has a Party member who serves as an election chairperson;" thus, proceeding by primary appears to be the only option. (*Id.*). "The Independence Party wants its members to be allowed to witness party designating petitions in village elections," including as witnesses to petitions for "candidates in the June 20, 2017 elections in the villages of North Syracuse and Liverpool," "regardless of whether [its] members are residents of a particular village." (Dkt. No. 1, ¶ 20).

The individual Plaintiffs are registered New York voters and members of the New York Independence Party. (Dkt. No. 5-5, ¶ 4; Dkt. No. 5-8, ¶ 4; Dkt. No. 5-9, ¶ 4). Plaintiff Connolly is a resident of Wyantskill, New York (Dkt. No. 5-5, ¶ 3), and Plaintiffs Jaccarino and Parish are residents of North Tonawanda, New York (Dkt. No. 5-9, ¶ 3; Dkt. No. 5-8, ¶ 3). They wish to serve as witnesses to both party designating petitions and independent nominating petitions for candidates in the June 20, 2017 North Syracuse and Liverpool village elections. (Dkt. No. 5-5, ¶ 4; Dkt. No. 5-8, ¶ 4; Dkt. No. 5-9, ¶ 4). They "plan to circulate these petitions, but N.Y. Elec. Law §§ 6-204(1), 6-206[] . . . 15-108(3), and 15-108(4) prohibit [them] from doing so because [they are] not resident[s] of either the Village of North Syracuse or the Village of Liverpool."

---

was not allowed to present material evidence." *Id*. The Court declines to apply Rule 65(a)(2) given the short time period within which this motion must be decided, which does not allow adequate notice to the parties.

(Dkt. No. 5-5, ¶ 5; Dkt. No. 5-8, ¶ 5; Dkt. No. 5-9, ¶ 5).  They "have not circulated petitions in the Village of North Syracuse and the Village of Liverpool" because of the witness residency requirement.  (Dkt. No. 5-5, ¶ 6; Dkt. No. 5-8, ¶ 6; Dkt. No. 5-9, ¶ 6).

### B.  Defendants

Defendants Kosinski, Kellner, Spano, and Peterson ("State Defendants") are officials of the New York State Board of Elections ("NYSBOE"), which has

> In addition to the enforcement powers and any other powers and duties specified by law, the state board of elections shall have the power and duty to:
>
> > 1. issue instructions and promulgate rules and regulations relating to the administration of the election process, election campaign practices and campaign financing practices consistent with the provisions of law;
> >
> > 2. visit boards of elections, examine their procedures and records and direct that any such procedures be modified in any manner consistent with the provisions of this chapter.

N.Y. Elec. Law § 3-102(1), (2).

Defendant Onondaga County Board of Elections officials, Czarny and Sardo ("County Defendants"), have "the authority to determine the validity of objections to nominating petitions." (*Id*. at ¶ 31).  Defendant clerks of the Villages of North Syracuse and Liverpool, Kufel and Sims, have "the authority to invalidate a nominating petition." (*Id*. at ¶ 32).

### C.  Village Petition Process

The party designating petition process began in the Villages of North Syracuse and Liverpool on March 6, 2017; such petitions may be filed from April 10, 2017 to April 17, 2017, and "written specification of objections" to such petitions must be filed by April 20, 2017.  (Dkt. No. 1, ¶¶ 7–8; N.Y. Elec. Law § 15-108(7)(d), (9), (10)).  Village voters could begin signing independent nominating petitions on April 4, 2017.  (*Id*. at ¶ 5; N.Y. Elec. Law § 15-108(9)).  Independent nominating petitions may be filed with the village clerks from May 9, 2017 to May

16, 2019, and "written specifications of objections" to such petitions must be filed by May 19, 2017.  (*Id.* at ¶¶ 5–6; N.Y. Elec. Law § 15-108(8)(a), (10)).

New York Election Law states that "the number of signatures required on a designating petition shall be five percent of the number of enrolled voters of the party residing in the village." N.Y. Elec. Law § 6-204(2).  Therefore, candidates seeking an Independence Party nomination in the Village of North Syracuse, which has 243 Independence Party members, must obtain 13 signatures.  (Dkt. No. 1, ¶¶ 60, 62).  Candidates seeking an Independence Party nomination in the Village of Liverpool, which has 84 Independence Party members, must obtain 5 signatures.  (*Id.*).

An "independent nominating petition for a village office must be signed by at least one hundred voters in villages containing a population of five thousand or more . . . and by at least fifty voters in villages containing a population of one thousand and less than three thousand." N.Y. Elec. Law § 6-206(4).  Thus, for "independent candidates to access the ballot in the upcoming village elections . . . candidates in North Syracuse must obtain at least 100 signatures because North Syracuse's population is 6,800" and "because the Village of Liverpool has a population of 2,347, independent candidates must obtain 50 signatures."  (Dkt. No. 1, ¶ 61).

"[N]ominating documents for the Village of North Syracuse [must] be filed with the Onondaga County Board of Elections."[7]  (Dkt. No. 23-7, p. 12).  The Village of Liverpool, however, "conducts its own elections;" thus, "petitions and certificates are filed with the clerk of the village."[8]  (*Id.*).  Village clerks are required to serve as "the election officer of the village," and are responsible "for the general conduct of all village elections and . . . have . . . all authority

---

[7] Designating and nominating petitions for village elections must "be filed in the office of the Board of Elections of the county."  N.Y. Elec. Law § 6-144(1).
[8] When "a village election [is] not conducted by the board of elections," petitions must be filed "in the office of the village clerk."  N.Y. Elec. Law § 6-144(1).

. . . which may be reasonable and necessary to provide for the proper and orderly conduct of such elections and the proceedings preliminary and subsequent thereto." N.Y. Elec. Law § 15-124(1). "Any petition filed with the officer or board charged with the duty of receiving it shall be presumptively valid if it is in proper form and appears to bear the requisite number of signatures, authenticated in a manner prescribed by this chapter." N.Y. Elec. Law § 6-154(1).

"Written objections to . . . a nominating or designating petition . . . may be filed by any voter registered to vote for such public office." *Id.* at § 6-154(2). Objections must be filed with the village clerk, who must notify the county board of elections of the objection. N.Y. Elec. Law § 15-108(10). "[T]he county board of elections shall immediately take all steps necessary and consistent with this chapter to render a determination of the questions raised in such objections and specifications." N.Y. Elec. Law § 15-108(10). Objectors may also bring an invalidation proceeding in state court. N.Y. Elec. Law § 16-102.

## III.    STANDING

Defendants challenge whether there is an actual case or controversy and whether Plaintiffs sufficiently allege standing. The Court must therefore assure itself that standing exists before considering the merits of Plaintiffs' motion for a preliminary injunction. *See Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 117 (2d Cir. 1991) ("Because standing is jurisdictional under Article III of the United States Constitution, it is a threshold issue in all cases.") (citing *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471–76 (1982)).

"The judicial power of the United States, and thus the jurisdiction of federal courts, is limited by Article III of the Constitution to "Cases and Controversies." *Hedges v. Obama*, 724 F.3d 170, 188 (2d Cir. 2013). "An important component of the Article III jurisdictional limit of

7

federal courts to deciding 'cases' or 'controversies' is standing." *All. For Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 85 (2d Cir. 2006). "[T]he doctrine of standing . . . requires every federal plaintiff to establish, 'for each claim he seeks to press,' a personal injury that is fairly traceable to the defendant's conduct and likely to be redressed by the requested relief." *Ret. Bd. of the Policemen's Annuity & Benefit Fund of the City of Chicago v. Bank of N.Y. Mellon*, 775 F.3d 154, 159 (2d Cir. 2014) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)).  To establish Article III standing, a plaintiff must show "(1) an 'injury in fact,' (2) a 'sufficient causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 383 (2d Cir. 2015) (quoting *Susan B. Anthony List v. Driehaus*, ___U.S.___, 134 S.Ct. 2334, 2341 (2014)).

The County Defendants argue that because there is no evidence that any Onondaga County Board of Elections official has ever determined that a petition Plaintiffs witnessed was invalid for lack of residency, Plaintiffs fail to show that they suffered any injury.  (Dkt. No. 26, ¶¶ 4–5; Dkt. No. 27, ¶¶ 4–5 ).  This, however, is a pre-enforcement challenge to the witness residence requirement, thus the standing rules are somewhat "relaxed." *National Organization for Marriage, Inc. ("NOM") v. Walsh*, 714 F.3d 682, 689 (2d Cir. 2013).

"[T]he Supreme Court has recognized that a plaintiff in some circumstances may have standing to sue even when the plaintiff shows only an imminent threat of future harm or a present harm incurred in consequence of such a threat." *Hedges*, 724 F.3d at 188–89 (citing, *inter alia*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 & n.2 (1992)).  A pre-enforcement challenge to a statute is one circumstance in which courts have approved a "forgiving" approach and "used a more permissive standard" in evaluating standing.  *Id*. at 196 (citing *Babbitt v.*

*United Farm Workers Nat'l Union*, 442 U.S. 289 (1979)); *see also NOM*, 714 F.3d at 689 ("[W]e assess pre-enforcement First Amendment claims . . . under somewhat relaxed standing and ripeness rules.").  In *Vermont Right to Life Committee, Inc. v. Sorrell*, the Second Circuit explained that "[a] plaintiff bringing a pre-enforcement facial challenge against a statute need not demonstrate to a certainty that it will be prosecuted under the statute to show injury, but only that it has an actual and well-founded fear that the law will be enforced against it."  221 F.3d 376, 382 (2d Cir. 2000)); *see also NOM*, 174 F.3d at 689 (explaining that a plaintiff's "real and imminent fear of . . . chilling" of First Amendment rights "is enough" to establish a case or controversy).

In this case, Plaintiffs submitted affidavits stating their intention to serve as witnesses to candidate petitions in the North Syracuse and Liverpool village elections.  (Dkt. No. 5-5, ¶ 4; Dkt. No. 5-8, ¶ 4; Dkt. No. 5-9, ¶ 4).  They have not attempted to circulate petitions, however, because, as they are not residents of either village, New York Election Law "prohibits" them from serving as witnesses.  (Dkt. No. 5-5, ¶ 5; Dkt. No. 5-8, ¶ 5; Dkt. No. 5-9, ¶ 5).  Indeed, Plaintiffs reasonably fear that if they circulated petitions, signed them as witnesses, and filed them with the village clerk, the village clerk, who is tasked with ascertaining "whether nominating petitions filed with h[er], prima facie at least, comply with the law," *Falcone v. Manupella*, 159 A.D.2d 795, 795 (3d Dept. 1990),[9] would invalidate the petitions as non-compliant with state law on the basis that the witnesses (Plaintiffs) were not village residents. *See Vermont Right to Life Committee*, 221 F.3d at 383 (finding that the plaintiff adequately established that the statute could apply to the speech at issue and concluding that the plaintiff

---

[9] Under New York law, village clerks are required to serve as "the election officer of the village," and are responsible "for the general conduct of all village elections and shall have vested in h[er] all authority, consistent with this chapter which may be reasonable and necessary to provide for the proper and orderly conduct of such elections and the proceedings preliminary and subsequent thereto."  N.Y. Elec. Law § 15-124(1).

therefore had "standing to challenge those provisions of the law," explaining that the plaintiff's concern regarding the applicability of the statute was "reasonable enough that it may legitimately fear that it will face enforcement of the statute by the State"). Thus, Plaintiffs plausibly allege that they have an "actual and well-founded fear" that Defendants will apply the witness residency requirement contained in the New York Election Law to invalidate any petitions they submit. *See id.* ("The fear of civil penalties can be as inhibiting of speech as can trepidation in the face of threatened criminal prosecution.").

Defendant Sims, the Clerk of the Village of Liverpool, submitted an affidavit in which she states: "Although I am granted statutory authority to invalidate a nominating petition as the Village Clerk, the Village of Liverpool has not previously enforced the residency requirement . . . nor does [it] intend to do so in the future." (Dkt. No. 25-1, ¶ 5). In *Vermont Right to Life Committee*, the State argued that the plaintiff's "fear of suit could not possibly be well-founded because the State has no intention of suing [the plaintiff] for its activities." 221 F.3d at 383. The Second Circuit rejected this argument, acknowledging that "[w]hile that may be so, there is nothing that prevents the State from changing its mind." *Id.*; *see also Pacific Capital Bank, N.A. v. Connecticut*, 542 F.3d 341, 350 (2d Cir. 2008) (finding the plaintiff established standing despite the state's assertion that it had not "initiated any action to enforce that statute against [the plaintiff] or any other national bank . . . and it is unknown how the State will apply that section in any future enforcement action"). Thus, the allegations in the Complaint and Plaintiffs' affidavits are sufficient to establish standing.

Defendants also argue that the evidence is insufficient to show a likelihood that Plaintiffs will circulate any petitions as they have yet to identify a candidate. (Dkt. No. 23-7, p. 13). While the identification of a candidate would further Plaintiffs' standing argument, the absence

of such specificity regarding intended activities for purposes of standing is not necessarily dispositive in a pre-enforcement case. In *Green Party of Connecticut v. Garfield*, 616 F.3d 213, 243 (2d Cir. 2010), for example, the Second Circuit found that even though no plaintiff had "declared an intention to spend enough personal wealth to trigger the excess expenditure provision," because there was evidence that the Green Party plaintiff occasionally endorsed a major-party candidate, if the Green Party endorsed such a candidate and members chose to contribute to that candidate, "those contributions – combined with the candidate's other fundraising efforts – could cause the candidate to trigger the excess expenditure provision" at issue. *Id*. The Second Circuit therefore concluded that "the potential chilling effect on plaintiffs' independent expenditures" was sufficient to provide standing. *Id*.

Here, Plaintiffs have declared an intention to circulate and witness petitions in the Villages of North Syracuse and Liverpool. This activity would violate the witness residence requirement, and New York Election Law, as it is written presently, would prohibit or open to objection the validation of the petitions. Mindful of the "forgiving" standard applicable in pre-enforcement cases, the Court concludes that the absence of a candidate is not dispositive of the standing issue, and that Plaintiffs have otherwise adduced sufficient evidence that they intend to engage in conduct that would trigger the application of the witness residence requirement. *Hedges*, 724 F.3d at 196.

## IV.    MOOTNESS

The time period for circulating and filing party designating petitions has passed. The Court therefore inquired of Plaintiffs' counsel at oral argument whether their request for relief with respect to § 6-204(1) (party designating provision) is moot. "Federal courts have no constitutional power to consider a moot case, which does not present a live controversy." *NOM*,

714 F.3d at 692.  Plaintiffs' counsel replied that it was not moot in view of Plaintiff Connolly's second affidavit, in which Connolly states that he has "a clear and definite intention to circulate designating . . . petitions as a witness in both the Village of Liverpool and the Village of North Syracuse elections, which will take place on June 20, 2017 as well as *future village elections* in those villages."  (Dkt. No. 33, ¶ 4) (emphasis added).  Based on Connolly's affidavit, the Court concludes that although the time period for circulating party designating petitions has expired for the June 2017 village elections, the claim for relief "is not moot, for it falls within the judicially created exception for cases 'capable or repetition, yet evading review.'"  *NOM*, 714 F.3d at 692 (quoting *FEC v. Wisc. Right to Life, Inc.*, 551 U.S. 449, 462 (2007)).  In *NOM*, the Second Circuit explained that: "The exception applies where (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again."  *Id.* (internal quotation marks omitted).

The designating petition circulation cycle lasted from March 6, 2017 to April 17, 2017, (*see* Dkt. No. 1, ¶¶ 7–8; N.Y. Elec. Law § 15-108(7)(d), (9), (10)), and thus it is "too short to be fully litigated prior to cessation."  *NOM*, 551 U.S. at 462 (citing *Porter v. Jones*, 319 F.3d 483, 490 (9th Cir. 2003) ("Election cases often fall within this exception, because the inherently brief duration of an election is almost invariably too short to enable full litigation on the merits.")). Further, there is evidence that at least one Plaintiff intends to engage in the circulation of party designating petitions in future Village of North Syracuse and Village of Liverpool elections. Although there is a bill pending that would remove the witness residence requirement, there is no indication when – or if[10] – that bill will become law.  There is thus "a reasonable expectation" that Plaintiffs will again find themselves faced with the prospect of wishing to engage in petition

---

[10] In their reply, Plaintiffs assert that this legislation has been pending since 2012.  (Dkt. No. 29, p. 9).

circulation activity in the Villages of North Syracuse and Liverpool, but chilled from doing so in view of the witness residence requirement. Accordingly, the Court is satisfied that Plaintiffs' claim for relief with respect to the party designating petition provision falls within the exception for cases "capable of repetition, yet evading review." *Wisc. Right to Life*, 551 U.S. at 462.

## V.    CONCLUSIONS OF LAW

### A.    Fed. R. Civ. P. 65(a)

Generally, "[a] party seeking a preliminary injunction must demonstrate: (1) 'a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor;' (2) a likelihood of 'irreparable injury in the absence of an injunction;' (3) that 'the balance of hardships tips in the plaintiff's favor;' and (4) that the 'public interest would not be disserved' by the issuance of an injunction." *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015) (quoting *Salinger v. Colting*, 607 F.3d 68, 79–80 (2d Cir. 2010)) (alterations omitted). When, however, an injunction "'will affect government action taken in the public interest pursuant to a statute or regulatory scheme,'" the moving party must show "a likelihood of success on the merits." *Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton*, 841 F.3d 133, 143 (2d Cir. 2016) (quoting *Red Earth LLC v. United States*, 657 F.3d 138, 143 (2d Cir. 2011)); *see also Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010) (explaining that, in general, when a party seeks an injunction that will affect government action "a serious question going to the merits is usually insufficient, even if the balance of hardships tips decidedly in the applicant's favor."). Accordingly, the Court applies "the more rigorous likelihood-of-success standard." *Sinisgallo v. Town of Islip Housing Auth.*, 865 F. Supp. 2d 307, 328 (E.D.N.Y. 2012).

Further, the moving party must "meet a higher standard where," as here: "(i) an injunction will alter, rather than maintain, the status quo, or (ii) an injunction will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits." *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 33–34 (2d Cir. 1995). Indeed, "if a preliminary injunction will make it difficult or impossible to render a meaningful remedy to a defendant who prevails on the merits at trial, then the plaintiff should have to meet the higher standard of substantial, or clear showing of, likelihood of success to obtain preliminary relief." *Id*. at 35. It is undisputed that because a preliminary injunction would provide Plaintiffs with nearly, if not all, the relief sought, they must establish a substantial likelihood of success.

**B.    Analysis**

**1.    Likelihood of Success**

**a.    Nomination via Primary or Caucus**

The State Defendants argue that Plaintiffs are unlikely to succeed on the merits because under N.Y. Election Law § 6-202, the Independence Party is required to nominate candidates via caucus. (Dkt. No. 23-7, p. 10). Thus, they argue, "there are no designating petitions that could under any circumstances be eligible to be circulated for the Independence Party for these contests." (*Id*. at p. 11). Section § 6-202 states, in relevant part: "Party nominations of candidates for village offices in any county shall be made at a party caucus or at a primary elections, as the rules of the county committee, heretofore or hereafter adopted consistent with the provisions of this chapter provide." N.Y. Elec. Law § 6-202(1). The State Defendants assert that the Rules of the New York State Committee of the Independence Party "have no provision

that allows for individuals to petition for the designation of a candidate or primary for village election."[11] (Dkt. No. 23-7, p. 10; Dkt. No. 23-2, p. 7 (Independence Party Rules, Article 6)).

Plaintiffs contest the State Defendants' interpretation of § 6-202(1). Further, they assert that the New York Independence Party "generally chooses primary elections," but acknowledge that it "may choose for a caucus" if there is "a Party member in the village serving as an election chairperson." (Dkt. No. 29, p. 9). Plaintiffs explain that because neither the Village of Liverpool nor the Village of North Syracuse "has a Party member who serves as an election chairperson," a primary election is the only option. (*Id.* at p. 10). At oral argument, the State Defendants conceded that Plaintiff Independence Party could choose to use the primary process and that this issue only pertained to party designating petitions – not independent nominating petitions, which do not involve political parties. The availability of a caucus proceeding therefore does not undercut Plaintiffs' likelihood of success.

### b.    State Defendants –
### Commissioners of the New York State Board of Elections

The State Defendants argue that Plaintiffs cannot establish a likelihood of success because there is no evidence that they, as NYSBOE commissioners, have any role "in determining the validity of any signature on village nominating or designating petition." (Dkt. No. 23-7, p. 12). They assert that the local election board "is the final administrative determination" when there is an issue concerning the validity of a nominating or designating petition and is only reviewable in a court proceeding. (*Id.*). Plaintiffs "acknowledge that the NYSBOE does not have enforcement authority over the validity of the party designating and independent nominating petitions in village elections." (Dkt. No. 29, p. 10). Plaintiffs note,

---

[11]The State Defendants also argued that the Onondaga County Independence Party Interim County Organization rules "do not provide for petitioning or primaries for village elections," either. (Dkt. No. 23-7, p. 10; Dkt. No. 23-3, p. 10 (County Independence Party Rules, Section VII)). The County Independence Party dissolved in February 2009, however, and thus the rules are non-existent. (Dkt. No. 29, p. 10; Dkt. No. 29-2, pp. 4–5).

however, that the NYSBOE does have "the power over the county boards of elections to change

their procedures to make them consistent with New York Election Law." (*Id.*). Section 3-102

provides, in relevant part that:

> In addition to the enforcement powers and any other powers and duties specified
> by law, the state board of elections shall have the power and duty to:
>
>> 1. issue instructions and promulgate rules and regulations relating to the
>> administration of the election process, election campaign practices and
>> campaign financing practices consistent with the provisions of law;
>>
>> 2. visit boards of elections, examine their procedures and records and
>> direct that any such procedures be modified in any manner consistent with
>> the provisions of this chapter.

N.Y. Elec. Law § 3-102(1), (2). This provision appears to give the NYSBOE authority over

local boards of elections. Thus, the State Defendants' argument is without merit.

### c.      Constitutionality of Witness Residence Requirement

Plaintiffs have established a likelihood of success on the merits with respect to the

unconstitutionality of the witness residence requirement in N.Y. Elec. Law §§ 6-204(1), 6-

206(2), 15-108(3), and 15-108(4). Indeed, as they acknowledged at oral argument, no Defendant

contends otherwise in view of the holding in *Lerman v. Board of Elections in the City of New*

*York*, that "the witness residence requirement in N.Y. Elec. Law § 6-132(2) is unconstitutional

on its face." 232 F.3d 135, 145 (2d Cir. 2000); *see also LaBrake v. Dukes*, 96 N.Y.2d 913, 914

(2001) (finding "residency requirement" in N.Y. Elec. Law §6-132(2) "violated the First

Amendment of the United States Constitution"); *Chou v. N.Y. State Bd. of Elections*, 332 F.

Supp. 2d 510, 516 (E.D.N.Y. 2004) (finding witness residence requirement in N.Y. Elec. Law §

6-140(1)(B) unconstitutional under the First and Fourteenth Amendments); *McGuire v.*

*Gamache*, 5 N.Y.3d 444, 447 (2005) (applying *LaBrake* and concluding that "subscribing

witness who is otherwise qualified to circulate a nominating petition for independent candidates

16

cannot be disqualified under Election Law § 6-140(1)(b) because the witness resides outside the political subdivision that corresponds to the office or position sought by the candidate").[12]

In *Lerman*, the Second Circuit found that: (1) "petition circulation activity . . . while part of the ballot access process, clearly constituted core political speech subject to exacting scrutiny;" (2) "the witness residence requirement severely burdens political speech by drastically reducing the number of persons available to circulate petitions;" (3) "petition circulation bears an intimate relationship to the right to political or expressive association," which "is at the core of the First Amendment, and even practices that only potentially threaten political association are highly suspect;" (4) "[s]ince the section 6-132(2) witness residence requirement imposes a severe burden on political speech and association, the requirement must therefore be narrowly tailored to advance a compelling state interest;" and (5) the witness residence requirement did "not bear even a *rational* relationship to any" of the state's asserted interests – "ensuring integrity and preventing fraud," "ensuring that candidates demonstrate a sufficient modicum of support before their name is included on the ballot," and "ensuring that non-residents may not impose the cost of a primary on the district" – "let alone the narrowly tailored relationship that strict scrutiny demands." 232 F.3d at 146–50 (internal quotation marks and alterations omitted). Thus, it held that the witness residence requirement was unconstitutional. *Id*. at 145.

Plaintiffs contend that the witness residence requirement in N.Y. Elec. Law §§ 6-204(1), 6-206, 15-108(3), and 15-108(4) burdens their First Amendment freedom of speech and association rights. (Dkt. No. 5-3, p. 2). "In determining the level of scrutiny to be applied to the . . . witness residence requirement," the Court "first must assess the extent to which that requirement burdens" First Amendment rights. *Lerman*, 232 F.3d at 145. It is well settled that

---

[12]According to Plaintiffs, these provisions "impact all New York elections, except village elections," which are governed by, *inter alia*, N.Y. Elec. Law §§ 6-204(1), 6-206(2), 15-108(3), and 15-108(4). (Dkt. No. 5-3, p. 1).

"[w]hen state elections laws subject speech, association, or the right to vote to 'severe restrictions, the regulation must be narrowly drawn to advance a state interest of compelling importance.'" *Id.* (quoting *Burdick v. Takushi*, 504 U.S. 428, 434 (1992)).

It is undisputed that the individual Plaintiffs in this case seek to engage in petition circulation activity. As stated, the Second Circuit has found "petition circulation activity" to constitute "core political speech subject to exacting scrutiny." *Id.* at 146. Plaintiffs have also presented evidence that there are 243 voters affiliated with the Independence Party in the Village of North Syracuse and 84 voters in the Village of Liverpool. (Dkt. No. 5-5, ¶¶ 9–10). In contrast, there are "16,578 enrolled Independence Party members in Onondaga County," and "501,738 enrolled Independence Party members in the State of New York." (*Id.* at ¶¶ 11–12). It is therefore reasonable to conclude, as Plaintiffs note, that the village residence requirement "drastically reduces the number of Independence Party members who can associate with candidates in the Village of North Syracuse and the Village of Liverpool. (*Id.* at ¶ 13). *See also Lerman*, 232 F.3d at 146 ("[T]he witness residence requirement severely burdens political speech by 'drastically reduc[ing] the number of persons . . . available to circulate petitions.'") (quoting *Buckley v. Am. Constitutional Law Found., Inc.*, 525 U.S. 182, 193, (1999)). Thus, Plaintiffs have shown that N.Y. Elec. Law §§ 6-204(1), 6-206, 15-108(3), and 15-108(4) are likely to impose a severe burden on political speech and association.

Having concluded that the burden imposed by the witness residence requirement is severe, the Court must consider whether it is "narrowly tailored to advance a compelling state interest," which it must be, "in order to pass constitutional muster." *Id.* at 149. Here, Defendants articulate no state interest in support of the witness residence requirement. Moreover, the State Defendants note that "a bill that seeks to remove the challenged witness

residency requirement language from the contested N.Y. Elec. Law statutes . . . was . . . passed by[] both the Assembly and Senate in the New York State legislature" and is awaiting the governor's signature.  (Dkt. No. 23-7, n.1).[13]  As Defendants identify no state interest in support of the witness residency requirement, the Court can only conclude that it "has no 'plainly legitimate sweep at all" and therefore violates the First Amendment.  *Lerman*, 232 F.3d at 153. Thus, Plaintiffs have established a substantial likelihood of success on the merits.

### 2.    Irreparable Harm

"'The loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury.'"  *New York Progress & Protection PAC v. Walsh*, 733 F.3d 483, 486 (2d Cir. 2013) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).  The State Defendants do not challenge this proposition; they challenge the timing of Plaintiffs' application. (Dkt. No. 23-7, p. 12).  They argue that Plaintiffs' delay in moving for relief, until after the election process was underway, weakens their claim of irreparable harm.  (*Id*. at pp. 12–13).

"Laches is an equitable defense which bars injunctive relief where a plaintiff unreasonably delays in commencing an action."  *H2O v. Town Bd. of East Hampton*, 147 F. Supp. 3d 80, 98 (E.D.N.Y. 2015) (citations omitted).  "[T]he failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury."  *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995).

Plaintiffs commenced this action on March 24, 2017, after the party designating petition process had begun and less than two weeks before the independent nominating process was to commence.  (Dkt. No. 1, ¶¶ 5–8).  Plaintiffs offer no explanation for commencing this action

---

[13] The bill, however, even if signed during the pendency of this action, specifies that it will not take effect for 120 days.  (Dkt. No. 23-6, pp. 3, 10).  Thus, as the State Defendants acknowledged at oral argument, it provides no possibility of relief to Plaintiffs in connection with the June 20, 2017 village elections.

after the party designating petition process began and less than two weeks before the independent

nominating petition process began. *See Merced v. Spano*, No. 16CV3054 (SJ) (SMG), 2016 WL

3906646, at *2–3, 2016 U.S. Dist. LEXIS 91650, at *7 (E.D.N.Y. July 14, 2016) (finding that

the plaintiffs' delay weighed against a finding of irreparable harm: "with the exception of 1986,

the Party has collected signatures and submitted petitions pursuant to Section 6-140 every two

years since 1974, yet the instant motion was filed a week before 2016's brief, six-week

petitioning period began. No satisfactory explanation has been offered for bringing this action on

the heels of an election."). The Second Circuit, however, has been critical of delay arguments

(like the one the State Defendants make here) in political speech cases. *See N.Y. Progress &*

*Prot. PAC*, 733 F.3d at 489 ("The district court thought that the plaintiff created an 'artificial

urgency' by waiting until 'forty-one days before the . . . election' before filing suit. Although the

district court cited insufficient time for 'fair consideration . . . before deciding a constitutional

issue of such importance,' we should not 'mak[e] unnecessary distinctions . . . between speech

that we find to be urgent and that which we think can bide its time.'") (quoting *Tunick v. Safir*,

209 F.3d 67, 95 (2d Cir. 2000) (Sack, J., concurring)). The Court likewise finds no basis for

concluding that the delay in this case undermines the irreparable harm Plaintiffs suffer as a result

of the chilling of their First Amendment rights to freedom of speech and association.

### 3.    Balance of the Hardships

Next, the Court "'must balance the competing claims of injury and must consider the

effect on each party of the granting or withholding of the requested relief." *Winter v. Nat. Res.*

*Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (quoting *Amoco Production Co. v. Gambell*, 480 U.S.

531, 542, (1987)) (internal quotation marks omitted). Defendants rehash prior arguments but do

not identify any hardship that would accompany an award of injunctive relief in Plaintiffs' favor.

At oral argument, the State Defendants asserted that a preliminary injunction would interrupt the election process, require notification to State employees and re-drafting of rules and petitions, and take time and resources from State employees during the election process.  The State Defendants, however, presented no evidence in support of these assertions.  Further, the State's assertions are suspect in light of the County Defendants' acknowledgment that a preliminary injunction would cause no hardship.  Thus, when weighed against the absence of hardship to Defendants, the Court concludes that the burden the witness residence requirement places on Plaintiffs' political speech during the election process tips the scales in Plaintiffs' favor.  *See New York Progress & Protection PAC*, 733 F.3d at 488 ("The value of political speech is at its zenith at election time.").

### 4.    Public Interest

"[S]ecuring First Amendment rights is in the public interest."  *Id.* (citing *Am. Civil Liberties Union v. Ashcroft*, 322 F.3d 240, 247 (3d Cir. 2003) ("[T]he Government does not have an interest in the enforcement of an unconstitutional law.")).

Satisfied that Plaintiffs have established standing to challenge N.Y. Elec. Law §§ 6-204(1), 6-206, 15-108(3), and 15-108(4), and having considered Plaintiffs' uncontroverted substantial likelihood of success on the merits of their challenge to the constitutionality of the witness residence requirement, the irreparable injury to Plaintiffs' rights to freedom of speech and association, that the balance of the equities weighs entirely in Plaintiffs' favor, and the public interest in securing First Amendment rights, the Court concludes that Plaintiffs are entitled to a preliminary injunction.

### C.     Security

Rule 65 provides in relevant part that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).  "The Rule 65(c) security requirement is designed to 'assure[ ] the [restrained] party that it may readily collect damages from the funds posted in the event that it was wrongfully [restrained], and that it may do so without further litigation and without regard to the possible insolvency of the plaintiff.'"  *U.S. D.I.D. Corp. v. Windstream Commc'ns, Inc.*, 775 F.3d 128, 135 (2d Cir. 2014) (quoting *Nokia Corp. v. InterDigital, Inc.*, 645 F.3d 553, 557 (2d Cir. 2011) (alterations in original)).  "Rule 65(c) gives the district court wide discretion to set the amount of a bond, and even to dispense with the bond requirement where there has been no proof of likelihood of harm, or where the injunctive order was issued to aid and preserve the court's jurisdiction over the subject matter involved."  *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 136 (2d Cir. 1997) (internal quotations omitted).  The parties have not addressed what security would be appropriate in this case.  Accordingly, any party which seeks to address the security issue is directed to submit a letter brief by May 9, 2017, addressing the issue.

## VI.     CONCLUSION

For these reasons, it is

**ORDERED** that Plaintiffs' motion for a preliminary injunction (Dkt. No. 5) is **GRANTED**; and it is further

**ORDERED** that Defendants are enjoined from enforcing the residency requirement in N.Y. Elec. Law §§ 6-204(1), 6-206, 15-108(3), and 15-108(4) against Plaintiffs in connection

with the June 20, 2017 elections in the Village of North Syracuse and the Village of Liverpool; and it is further

      **ORDERED** that any letter brief addressing the appropriate security under Fed. R. Civ. P. 65(c) is due by May 9, 2017.

      **IT IS SO ORDERED.**

Dated: May 2, 2017

Brenda K. Sannes
U.S. District Judge