IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

MATTHEW PARISH, *et al.*,

              Plaintiffs,          Civil Action No.
                                  5:17-CV-0344 (BKS/DEP)

     v.

PETER S. KOSINSKI, *et al.*,

              Defendants.

_____

<u>APPEARANCES</u>:                  <u>OF COUNSEL</u>:

<u>FOR PLAINTIFFS</u>:

HOLTZMAN VOGEL JOSEFIAK      JASON TORCHINSKY, ESQ.
TORCHINSKY PLLC             SHAWN T. SHEEHY, ESQ.
45 North Hill Drive, Suite 100
Warrenton, VA 20186

WLADIS LAW FIRM, P.C.         TIMOTHY J. LAMBRECHT, ESQ.
P.O. Box 245
Syracuse, NY 13214

<u>FOR DEFENDANTS</u>:

HON. ERIC SCHNEIDERMAN      AIMEE M. COWAN, ESQ.
New York State Attorney General   Assistant Attorney General
615 Erie Blvd. West, Suite 102
Syracuse, NY 13204-2465

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

This is an action brought by three individuals and the Independence Party of New York against officials with the New York State Board of Elections and the Onondaga County Board of Elections, as well as two village clerks, seeking declaratory and injunctive relief. In their complaint, plaintiffs challenged the constitutionality of four provisions of the New York Election Law, arguing that they abridge plaintiffs' First Amendment rights to free speech and freedom of association.

Shortly after commencement of the action, plaintiffs moved for and secured the issuance of a preliminary injunction against enforcement of the four disputed provisions in the context of elections being held in the Villages of North Syracuse and Liverpool in June 2017. Less than two months after the issuance of the preliminary injunction, the Governor of the State of New York signed into law legislation removing the offending witness residency requirement from the statutory provisions at issue. The action was ultimately settled subject to plaintiffs' right to request an award of costs and attorney's fees under 42 U.S.C. § 1988.

Plaintiffs have now moved for recovery of costs and attorney's fees. The New York State Board of Elections defendants have opposed that

2

motion, arguing both that based upon the circumstances of the case plaintiffs are not prevailing parties entitled to such an award, and in any event, the amounts sought are unreasonable.[1] For the reasons set forth below, I recommend the court determine that plaintiffs are prevailing parties, and that they recover costs and attorney's fees, although in amounts less than those requested.

I.    BACKGROUND

Plaintiffs commenced this action on March 24, 2017. Dkt. No. 1. The plaintiffs in the action include Matthew Parish, Thomas Jaccarino, and Tom Connolly, all of whom are registered New York voters affiliated with the Independence Party of New York, and who in their complaint expressed their desire to serve as witnesses to independent nominating petitions and party designating petitions for candidates in the anticipated June 20, 2017 elections in the villages of North Syracuse and Liverpool. *Id.* at 4-5. Also named as a plaintiff in the complaint is the Independence Party of New York, a recognized political party under the New York State

---

[1]    Although plaintiffs' fee application sought fees and costs to be apportioned among all defendants, plaintiffs have subsequently withdrawn their application as against officials with the Onondaga County Board of Elections and the Village of Liverpool. Dkt. Nos. 58, 59. The remaining named defendant, Diane Kufel, who was sued in her official capacity as the Clerk of the Village of North Syracuse, has never appeared in the action.

Election Law. *Id.* at 5. The defendants, all of whom are sued solely in their official capacities, include Peter S. Kosinski and Douglas A. Kellner, Co-Chairs of the New York State Board of Elections; Andrew J. Spano and Gregory P. Peterson, Commissioners with the New York State Board of Elections; Dustin M. Czarny and Michele L. Sardo, Commissioners with the Onondaga County Board of Elections; Diane Kufel, Clerk of the Village of North Syracuse; and Mary Ellen Sims, Clerk of the Village of Liverpool. *Id.* at 6-7. In their complaint, which is brought under 42 U.S.C. § 1983, plaintiffs alleged that sections 6-204(1), 6-206, 15-108(3), and 15-108(4) of the New York Election Law, each of which requires that witnesses to party designating petitions and independent nominating petitions for village office candidates be village residents, arguing that that requirement imposes an unconstitutional burden on their First Amendment rights to freedom of speech and association. *See generally* Dkt. No. 1.

On March 28, 2017, four days after the filing of their complaint, plaintiffs sought a preliminary injunction or, in the alternative, a permanent injunction against enforcement of the statutory provisions in issue. Dkt. No. 5. After hearing oral argument concerning the motion, District Judge Brenda K. Sannes issued a memorandum-decision and order on May 2,

4

2017, granting plaintiffs' motion. Dkt. No. 34. In her decision, *inter alia*, Judge Sannes rejected defendants' arguments that plaintiffs lacked standing to challenge the statutory provisions at issue and their claim of mootness, and granted plaintiffs' motion, concluding that (1) they established a substantial likelihood of success on the merits with regard to the unconstitutionality of the witness residency requirement of the statutes in question; (2) absent an injunction, plaintiffs would likely experience irreparable harm; (3) the balance of hardships tipped in favor of plaintiffs; and (4) the public interest in securing First Amendment rights also weighed in favor of the granting of a preliminary injunction. Dkt. No. 34 at 16-21. Defendants were therefore enjoined from enforcing the residency requirements of the four sections in question against plaintiffs in connection with the June 20, 2017 elections in the Villages of North Syracuse and Liverpool. *Id.* at 22-23.

Following issuance of the preliminary injunction, the case stagnated due to passage of the election cycle that generated the action, and because a bill had been introduced in and passed both by the New York State General Assembly and the New York State Senate abrogating the witness residency requirements at issue. To move the case forward,

plaintiffs filed a motion for summary judgment on June 19, 2017. Shortly

thereafter, on July 26, 2017, one day after Governor Andrew Cuomo

signed into law the bill abrogating the witness residency requirements, I

conducted a settlement conference in the action. During that conference,

all of the remaining issues, with the exception of payment of plaintiffs'

costs and attorney's fees, were resolved. A stipulation of judgment and

order was subsequently submitted to the court, and approved by me, on

July 27, 2017, dismissing the action except as to plaintiffs' potential

application for attorney's fees pursuant 42 U.S.C. § 1988(b), and

withdrawing plaintiffs' motion for summary judgment. Dkt. No. 53. That

stipulation provided, in relevant part, as follows:

> 3.     The Defendants stipulate that N.Y. Elec. Law
> §§ 6-204(1), 6-206, 15-108(3), and 15-108(4), as in
> effect on the day of this stipulation and order,
> violates the First Amendment to the United States
> Constitution.

Dkt. No. 53 at 2.[2]

---

[2]     The law signed by Governor Cuomo on July 25, 2017, eliminating the witness residency requirement, did not take effect until November 22, 2017. *See* 2017 Sess. Law News of N.Y. Ch. 106 (A. 567) (McKinney).

II.   PROCEDURAL HISTORY

On September 25, 2017, plaintiffs moved for an award of costs and
attorney's fees in the total amount of $64,601.48. Dkt. No. 57. The New
York State Board of Elections defendants have opposed that fee
application, arguing that plaintiffs cannot be considered as prevailing
parties, and further that the amounts sought are unreasonable, both
because the hourly rates at which the fee application is calculated exceed
reasonable rates for comparable legal services in this district, and the
number of hours expended in litigating the case was excessive. Dkt. No.
60. Plaintiffs have since replied addressing those arguments and further
supporting their application. Dkt. No. 61. Plaintiffs' application for costs
and attorney's fees has been referred to me for the issuance of a report
and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(A) and Northern
District of New York Local Rule 72.1 *See* Dkt. No. 62.

III.   DISCUSSION

A.   Prevailing Party Analysis

As a threshold matter, the court must determine whether plaintiffs
are properly considered to be prevailing parties for purposes of 42 U.S.C.
§ 1988. "[P]laintiffs may be considered 'prevailing parties' for attorney's

7

fees purposes [under 42 U.S.C. § 1988] if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Farrar v. Hobby*, 506 U.S. 103, 109 (1992) (quotation marks omitted). To qualify, a plaintiff must "prove the settling of some dispute which affects the behavior of the defendant toward the plaintiff." *Farrar*, 506 U.S. at 110 (quotation marks omitted). "A judgment – declaratory or otherwise – 'will constitute relief, for purposes of [section] 1988, if, and only if, it affects the behavior of the defendant toward the plaintiff.'" *Id.* (quoting *Rhodes v. Stewart*, 488 U.S. 1, 4 (1988)). More specifically, to be regarded as prevailing parties plaintiffs in this case must show that the legal relationship between the parties has been changed by the outcome of the case. *Tex. State Teachers Assn. v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989); *accord, Farrar*, 506 U.S. at 111. As the Supreme Court has noted,

> to qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim. The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or settlement. Whatever relief the plaintiff secures must directly benefit him at the time of the judgment or settlement. Otherwise the judgment or settlement cannot be said to affect the behavior of the defendant toward the plaintiff . . . . In short, a

> plaintiff prevails when actual relief on the merits of
> his claim materially alters the legal relationship
> between the parties by modifying the defendant's
> behavior in a way that directly benefits the plaintiff.

*Farrar*, 506 U.S. at 111-12 (quotation marks and citations omitted).

The Supreme Court's decision in *Garland* is instructive. In that case, the plaintiffs were considered "prevailing parties" because they "obtained a judgment vindicating [their] First Amendment rights [as] public employees," which "materially altered the [defendant] school district's policy limiting the rights of teachers to communicate with each other concerning employee organizations and union activities." *Garland*, 489 U.S. at 793.

Defendants claim that because they never intended to apply the defective statutory provisions, plaintiffs were not prevailing parties in this action, citing *Curtis v. City of Kingston*, No. 1:14-CV-0951, 2015 WL 10558693, at *3 (N.D.N.Y. May 7, 2015) (Peebles, M.J.), *report and recommendation accepted in part and modified in part not relevant*, 2016 WL 1223471 (N.D.N.Y. Mar. 28, 2016) (Hurd, D.J.)). In their complaint, plaintiffs sought a declaration that the four statutory provisions in question were unconstitutional, and an injunction against the enforcement of those provisions. Dkt. No. 1 at 18-19. They accomplished both of those goals. A preliminary injunction was entered enjoining defendants from enforcing the

provisions at issue in connection with two impending elections. Dkt. No. 34. Similarly, plaintiffs obtained the equivalent of declaratory relief when the parties entered into a stipulation agreeing that those four statutes, as they were in effect at the time of the stipulation and order, violated the First Amendment to the United States Constitution. Dkt. No. 53 at 2. The fact that plaintiffs' claims were later rendered moot by the Governor's action in signing into law legislation that would remove the offending provisions did not strip plaintiffs of their status as prevailing parties. *LaRouche v. Kazer*, 20 F.3d 68, 75 (2d Cir. 1994); *see also Trudeau v. Bockstein*, No. 05-CV-1019, 2008 WL 3413903, at * 3-4 (N.D.N.Y. Aug. 8, 2008) (finding that the issuance of a preliminary injunction brought about a change in the legal relationship between the parties, even though a permanent injunction was ultimately found unnecessary in light of the fact that any future injury was speculative and remote).

Because plaintiffs succeeded in obtaining an order enjoining defendants from enforcing the allegedly defective provisions, the relationship between the parties was altered, and plaintiffs are properly considered to be prevailing parties.

B.    Special Circumstances

The State Board of Elections defendants invite the court to invoke the special circumstances exception and deny plaintiffs' application for attorney's fees. Under that exception, a prevailing plaintiff may be denied attorney's fees under section 1988 if "special circumstances would render such an award unjust." *Kentucky v. Graham*, 473 U.S. 159, 164 (1985); *see also Disability Rights New York v. N. Colonie Bd. of Educ.*, No. 1:14-CV-0744, 2017 WL 1901958, at *4 (N.D.N.Y. May 8, 2017).

In this circuit, consideration of the special circumstances exception requires a two-step analysis under which the court must first determine whether "the plaintiff's claim was so strong on the merits and so likely to result in a substantial judgment that counsel in similar cases could be easily and readily, retained." *Kerry v. Quinn*, 692 F.2d 875, 878 (2d Cir. 1982); *see also Raishevich v. Foster*, 247 F.3d 337, 344 (2d Cir. 2001). If this requirement is satisfied, the court may exercise discretion to deny fees if, in consideration of all circumstances, such an award would work an injustice. *Id.* One of the factors to be considered in exercising that discretion is determining whether there was any bad faith on the part of

the party seeking recovery of fees. *Disability Rights in N.Y.*, 2017 WL 1901958, at *4.

In this instance, I find that neither prong of the special circumstances test has been met. While it may be, as defendants argue, that prior cases challenging other similar requirements foreshadowed the demise of the witness residency requirement in the four statutes in the face of a constitutional challenge, it is not at all clear that this is the type of case where an attorney could readily have been secured on a retained basis. Moreover, nothing in the defendants' papers establishes that the sort of bad faith that would rise to a level sufficient to invoke the special circumstances exception.

Accordingly, I recommend against a finding that plaintiffs, although prevailing parties, should not recover costs and attorney's fees.

C.    The Amount to be Awarded

At the outset, it should be noted that a determination of the amount to award to a prevailing party on an application for costs and attorney's fees is a matter entrusted to the court's sound discretion. *Reilly v. Natwest Markets Grp. Inc.*, 181 F.3d 253, 267 (2d Cir. 1999). In this circuit fee awards are governed by the court's instructive decision in *Arbor Hill*

12

*Concerned Citizens Neighborhood Ass'n v. Cty. of Albany,* 522 F.3d 182, 183-84 (2d Cir. 2008). In *Arbor Hill*, after reviewing the history of attorneys' fees jurisprudence, including within the circuit, the court announced a new framework for analyzing fee applications, eschewing the traditional, two-step process of lodestar calculation followed by adjustment based upon case-specific factors, to which the court referred in its decision as "an equitable inquiry of varying methodology while making a pretense of mathematical precision". *Id.* at 189 (internal citations omitted). Upon rejecting the old test, the court adopted the "'presumptively reasonable fee'" model. *Id.* at 183-89.

Under the newly-announced protocol, a court must first consider whether the rates at which compensation is sought are those that a "reasonable, paying client would be willing to pay," before multiplying the number of hours expended by that figure. *Arbor Hill*, 522 F.3d at 190-91; *see also Lewis v. City of Albany Police Dep't*, No. 1:04-CV-152, 2008 WL 2103565, at *1 (N.D.N.Y. May 22, 2008) (Hurd, J.) (noting that "[a]ttorney's fees are awarded by determining a presumptively reasonable fee, reached by multiplying a reasonable hourly rate by the number of reasonably expended hours"). The determination of the rate at which a reasonable

client would be willing to compensate for the services rendered is informed

by several factors of varying degrees of relevance,

> including, but not limited to, the complexity and
> difficulty of the case, the available expertise and
> capacity of the client's other counsel (if any), the
> resources required to prosecute the case
> effectively . . . the timing demands of the case,
> [and] whether an attorney might have an interest
> (independent of that of his client) in achieving the
> ends of the litigation . . . .

*Arbor Hill*, 522 F.3d at 184.[3] The court in *Arbor Hill* cautioned that a court

should also "bear in mind that a reasonable, paying client wishes to spend

the minimum necessary to litigate the case effectively." *Id.* at 190. In

---

[3]    In *Arbor Hill*, the Court of Appeals for the Second Circuit also reinforced the appropriateness of considering the so-called "*Johnson* factors", when establishing a reasonable rate; those factors include

> (1) the time and labor required; (2) the novelty and the
> difficulty of the questions; (3) the level of skill required to
> perform the legal service properly; (4) the preclusion of
> employment by the attorney due to acceptance of the case;
> (5) the attorney's customary hourly rate; (6) whether the fee
> is fixed or contingent; (7) the time limitations imposed by the
> client or the circumstances; (8) the amount involved in the
> case and the results obtained; (9) the experience,
> reputation, and ability of the attorneys; (10) the
> "undesirability" of the case; (11) the nature and length of
> the professional relationship with the client; and (12) awards
> in similar cases.

*Arbor Hill*, 522 F.3d at 186-87, n.3, 190 (discussing *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 92-93, 96 (1989)).

making the final determination of an amount to be awarded to a prevailing party in a case such as this, the court "'must examine the hours expended by counsel and the value of the work product of the particular expenditures to the client's case'" and consider "'its own familiarity with the case and its experience generally [in addition] to the evidentiary submissions and arguments of the parties'" to determine the reasonableness of the fee request. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, No. 03-CV-502, 2005 WL 670307, at * 7 (N.D.N.Y. Mar. 22, 2005) (Homer, M.J.), *report and recommendation adopted*, 419 F. Supp. 2d 206 (N.D.N.Y. Sep 23, 2005), *aff'd,* 484 F.3d 162 (2d Cir. 2007) (quoting *DiFilippo v. Morizio*, 759 F.2d 231, 235-36 (2d Cir. 1985)).

 1. Calculating The Appropriate Reasonable Hourly Rate

The first step in determining an appropriate fee award is to determine the reasonable hourly rates to be applied. While roundly criticized by the Second Circuit, to the extent that it sought to establish a fixed schedule of firm hourly rates for all fee applications submitted in this district, regardless of nature of the particular case and type of legal services involved, the decision of another judge of this court in *Arbor Hill* nonetheless provides a helpful frame of reference for determining the

rates that a reasonable, paying client would be willing to pay to obtain services in Central New York of the type rendered by plaintiff's counsel in this action. *See Arbor Hill*, 2005 WL 670307, at *6-*7. In *Arbor Hill,* a case in which the plaintiffs sued seeking vindication of rights secured under the Voting Rights Act, 42 U.S.C. § 1973 *et seq.*, the Second Circuit affirmed the district court's finding, based upon the particular circumstances of that case, that recovery of attorneys fees should be calculated based upon the hourly rates of "$210 for experienced attorneys, $150 for associates with more than four years of experience, $120 for associates with less than four years experience, $80 for paralegals, and one-half of these rates for time expended for travel." *Arbor Hill*, 522 F.3d at 193-94.

To be sure, the rates articulated in *Arbor Hill* are not necessarily dispositive of those which may be appropriate in this instance. The decision setting out those rates was issued in 2005; one would reasonably expect that the controlling market rates have increased significantly since that time. Although some jurists from this district have adhered to the *Arbor Hill* rate schedule, despite the passage of time, as having continued vitality, *see*, *e.g.*, *Lewis*, 2008 WL 2103565, at *1-3 (applying the same rates as *Arbor Hill*), *Picinich v. United Parcel Serv.,* No. 5:01-CV-01868,

2008 WL 1766746, at *2 (N.D.N.Y. Apr. 14, 2008) (McCurn, S.D.J.),

*Paramount Pictures Corp. v. Hopkins,* No. 5:07-CV-593, 2008 WL 314541,

at *5 (N.D.N.Y. Feb. 4, 2008) (Scullin, S.D.J.), others have resisted

wooden application of *Arbor Hill* rates, on occasion awarding fees

calculated at higher rates, *see, e.g.*, *Luessenhop v. Clinton Cty., N.Y.*, 558

F. Supp. 2d 247, 266 (N.D.N.Y. 2008) (noting that the "prevailing market

hourly rate is now higher than $210" and awarding attorney's fees at a rate

of $235) (citation omitted); *Doe v. Kaiser*, 2007 WL 2027824, at *9-10

(N.D.N.Y. Jul. 9, 2007) (Peebles, M.J.) (attorney's fee award calculated at

an hourly rate of $250 based on consideration of what a reasonable client

of the Syracuse, New York community would pay and the experience of

the attorney); *Hoblock v. Albany County Bd. of Elections*, No. 1:04-CV-

1205, 2006 WL 3248402, at *3 (N.D.N.Y, Nov. 7, 2006) (Kahn, J.)

(awarding attorney's fees at an hourly rate of $225); *but see Auto. Lift Inst.*

*v. Backyard Buddy, Inc.*, No. 5:08-CV-1313, 2010 WL 2569237, at *1

(N.D.N.Y. June. 24, 2010) (Suddaby, J.) (finding $200 per hour a

reasonable rate for an experienced attorney's work within this district);

*Bergerson v. New York State Office of Mental Health*, No. 6:06-CV-1476,

2010 WL 610694, at *3 (N.D.N.Y. Feb. 16, 2010) (Hurd, J.) (awarding

$210 an hour for trial counsel instead of the requested $275 an hour); *Toffey v. Life Ins. Co. of N. Am.*, No. 5:05-CV-877, 2009 WL 3764222, at * 2 (N.D.N.Y. Nov. 10, 2009) (Scullin, S.D.J.) (finding $210 an hour a reasonable hourly rate for an experienced attorney in the District).

In this instance, citing several cases including, *inter alia*, *Pope v. County of Albany*, No. 1:11-CV-0736, 2015 WL 5510944 (N.D.N.Y. Sept. 16, 2015), plaintiff seeks recovery of fees calculated at hourly rates of $350 for partners, $200 for associates with at least three years of experience, $140 for all other associates, and $90 for paralegals. Dkt. No. 57-1 at 20-21. Jason B. Torchinsky and Timothy J. Lambrecht, who plaintiffs argue should recover fees at the $350 per hour rate, have submitted declarations detailing their significant litigation experience, including in connection with civil rights cases. *See* Dkt. Nos. 57-2, 57-4. It is also noted that Shawn Sheehy is a Senior Litigation Associate at Attorney Torchinsky's firm with six years of experience. Dkt. No. 57-1 at 23. Plaintiffs' seek recovery of fees for his services at the $200 per hour rate. *Id.* I recommend a finding that the rates at which recovery of attorneys' fees is sought by the plaintiffs are reasonable and consonant with recoveries in this district for comparably complex legal work. *See e.g.*,

*Jimico Enters. v. Lehigh Gas Corp.*, No. 07-0578, 2014 WL 1239030, at *6 (N.D.N.Y. Mar. 25, 2014) (Suddaby, J.) (approving as reasonable $300 an hour for partners, $180 for associates, and $80 for paralegals); *Legends are Forever, Inc. v. Nike, Inc.*, 2013 WL 6086461, at *3-4 (N.D.N.Y. Nov. 18, 2013) (Peebles, M.J.) (awarding attorney's fees based on an hourly rate of $350 for a partner and $275 for an associate); *Zalewski v. T.P. Builders, Inc.*, Nos. 10–CV–0876, 11–CV–1156, 2012 WL 5880327, at *3 (N.D.N.Y. Nov. 21, 2012) (Sharpe, J.) (awarding attorney's fees based on an hourly rate of $275 per hour for partners, $200 per hour for attorneys with more than four years of experience, $170 per hour for attorneys with less than four years of experience, and $90 per hour for paralegals); *Aquent, LLC v. Atl. Energy Servs.*, Inc., No. 1:09-CV-0524, 2012 WL 1005082, at *3 (N.D.N.Y. Mar. 23, 2012) (applying rates of $135 to $345 per hour for attorneys); Trudeau v. *Bockstein*, 05-CV-1019, 2008 WL 3413903, at *5–6 (N.D.N.Y. Aug. 8, 2008) (awarding attorneys' fees for local counsel with hourly rates of $345, $275, $250, and $190).

      2.    Reasonable Number of Hours

"[T]o determine whether time for which reimbursement is sought was reasonably spent, the court must evaluate the tasks and the time

documented in counsel's contemporaneous time records in light of its general experience and experience with the case." *Liberty Mut. Ins. Co. v. Commas Inc.*, No. 10-CV-717, 2012 WL 913312, at *3 (N.D.N.Y. Mar. 16, 2012) (quoting *DLJ Mtg. Capital, Inc. v. Act Lending Corp.*, No. 07-Civ. 10318, 2008 WL 5517589, at *7 (S.D.N.Y. Dec. 1, 2008)); *see also Pope*, 2015 WL 5510944, at *11. In making its review, the court retains the discretion to exclude excessive, redundant, or otherwise unnecessary hours, and should determine whether a reasonable attorney would have engaged in similar time expenditures. *Disability Rights N.Y.*, 2017 WL 1901958, at *6 (citing, *inter alia Hensley v. Eckerhardt*, 461 U.S. 424, 434 (1983)). When multiple attorneys have expended time in a particular matter, courts have the discretion to assess whether the extent of staffing was appropriate given the complexity of the litigation. *Pope*, 2015 WL 5510944, at *13 (citing *N.Y. State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983).

Plaintiffs have annexed to their fee application contemporaneous time records demonstrating the number of hours spent by the various professionals working on the case. In the application, they also have made several downward adjustments. First, plaintiffs do not claim any time

expended by junior associates Steven P. Saxe and Philip M. Gordon, as well as paralegals Erin Burroughs and Donna Smith, all of whom work at Holtzman Vogel Josefiak Torchinsky. Dkt. No. 57-4 at 3; *see* Dkt. No.57-1 at 27. That adjustment eliminates 49.75 hours of billable time, representing a reduction valued at $6,515. Dkt. No.57-1 at 27. In addition, plaintiffs have excluded 10.85 hours expended by the Wladis Law Firm's paralegal, representing a further reduction of $976.50.[4] Further, plaintiffs also do not seek recovery of time spent by Attorney Sheehy from May 9, 2017 to July 10, 2017, amounting to 34.5 hours, representing a further reduction of $6,900, for time spent working on a motion for summary judgment, drafting the final stipulation, and working on the confidential settlement agreement.[5] Plaintiffs also exclude the time spent by Attorneys Torchinsky and Lambrecht preparing the summary judgment motion,

---

[4]     Plaintiffs' moving papers are equivocal with respect to this issue, as well as the total amount attributable to Paralegal Senecal. In his declaration, Attorney Lambrecht seeks recovery of fees for the 10.85 hours of work performed by Paralegal Senecal, valued at $976.50. Dkt. No. 57-2 at 3. Plaintiffs' memorandum, by contrast, states that Attorney Lambrecht's firm will not ask to be compensated for the same 10.85 hours, valued at a higher amount of $1,519, a sum apparently calculated based upon an hourly rate of $140. Dkt. No. 57-1 at 27.

[5]     The filing of a motion for summary judgment in this case should not have been necessary, and I would not have deemed the work expended in connection with that motion to be compensable. In a much appreciated exercise of discretion, plaintiffs have not sought recovery of time expended in making that motion.

which they value at $2,380.[6] Dkt. No. 57-1 at 28. Finally, plaintiffs have

offered a ten percent discount from the amount that would be reflected if

the remaining hours were charged at the rates set forth above.

The resulting claim for attorney's fees for work performed by Jason

Torchinsky and Shawn Sheehy is broken down as follows:

| Attorney | Rate | Number of Hours | Total |
|---|---|---|---|
| Torchinsky | 350.00 | 33.75 | $11,812.50 |
| Sheehy | 200.00 | 147 | $29,400.00 |
| | | Total Claimed | $41,212.50 |
| | | Minus 10% | <$4,121.25> |
| | | Final | $37,091.25 |

Turning to plaintiffs' local counsel, the Wladis Law Firm seeks recovery of

the following amount for Attorney Timothy J. Lambrecht:[7]

---

[6]    Plaintiffs' valuation of $2,380 is based upon 6.8 hours spent by Attorneys
Torchinsky and Lambrecht in preparing the motion for summary judgment. Dkt. No. 87-
1 at 28. Exclusion of the time entries specified by plaintiffs, however, *see* Dkt. No. 87-1
at 28 n.7, results in a reduction of 6.25 hours. *See* Dkt. No. 57-3 at 7-8; Dkt. No. 57-4
at 3; Dkt. No. 57-5 at 5-6.

[7]    Based upon the memorandum of law, it is not entirely clear whether plaintiffs'
lead and local counsel conferred regarding the reductions that they have offered. First,
although plaintiffs' memorandum of law offers a ten percent reduction, that reduction is
not reflected in Attorney Lambrecht's declaration. *Compare* Dkt. No. 57-1 at 28 *with*
Dkt. No. 57-2. The court will assume that plaintiffs intended to apply a ten percent
reduction across all work that was performed on behalf of plaintiffs.
    Second, although plaintiffs' memorandum of law indicates plaintiffs' counsel will
exclude the time spent by Attorney Lambrecht in connection with the summary
judgment motion, that exclusion similarly is not reflected in his declaration. *Compare*
Dkt. No. 57-1 at 28 *with* Dkt. No. 57-2. The court will assume that plaintiffs intended to
exclude the time spent on the summary judgment motion and will exclude the 4.5 hours
outlined in plaintiffs' memorandum of law. Dkt. No. 57-1 at 28.

| Attorney | Rate | Number of Hours | Total |
|----------|------|-----------------|-------|
| Lambrecht | 350.00 | 67.7 | $23,695.00 |
| | | Minus 10% | <$2,369.50> |
| | | Final | $21,325.50 |

Having carefully reviewed the submissions of the plaintiffs, including the time entries, I agree that the amounts of time spent by the multiple attorneys representing plaintiffs was not wholly necessary and reasonable. Despite the experience touted by plaintiffs' attorneys, particularly Attorney Torchinsky, in similar types of matters and the facial strength of plaintiffs' claims in light of prior decisional authority striking down analagous statutes, it took three experienced attorneys nearly one hundred hours to draft a complaint and a motion for preliminary injunction, and to conduct the necessary legal research to support those endeavors. *See* Dkt. Nos. 57-1 at 25, 57-3, 57-5. Because the path for declaring the witness residency requirement had already been forged, this matter was not particularly complex. I note, moreover, that three attorneys, including two from Virginia, attended the settlement conference conducted by the court on July 26, 2017, representing and unnecessary duplication of effort.

In total, plaintiffs have requested attorney's fees in the amount of $58,416.75.[8] Based upon the foregoing, I recommend a further thirty-three percent reduction in that amount. *See Disability Rights of New York*, 2017 WL 1901958, at *7 (finding the plaintiffs' attorneys spending almost fifty hours drafting and revising initial pleadings and a request for a restraining order, approximately one hundred hours drafting and revising a motion for summary judgment, fifty hours on its response to defendants' motion for summary judgment, and thirty hours on its reply papers to be excessive, and reducing the amount claimed by fifty percent).

F.    Costs

In addition to attorney's fees, plaintiffs seek recovery of $4,848 in expenses incurred by the Holtzman Law Firm, representing reimbursement for air fare, meals and lodging, computerized legal research, telephone calls, airport parking, and filing fees. The Wladis Firm also seeks recovery of costs, in the amount of $1,098.23, representing reimbursement for Federal Express charges, process server fees,

---

[8]    In their memorandum of law, plaintiffs' indicate that they are requesting $58,655.25 in attorneys' fees, representing 232.34 hours of work. Dkt. No. 57-1 at 28. Based on the previous analysis, however plaintiffs are actually seeking $58,416.75 in attorney's fees, representing $37,091.25 for Attorneys Torchinsky and Sheehy and $21,325.50 for Attorney Lambrecht, inclusive of the ten percent reduction.

postage, and the cost of retaining the transcript for the preliminary

injunction hearing held on April 28, 2017.[9] In total, plaintiffs have sought

$5,946.23 in costs.

Although defendants have not challenged the amounts claimed for

costs, the court notes that Attorneys Torchinsky and Sheehy have sought

recovery of $400 in connection with their applications for *pro hac vice*

admission. Dkt. No. 57-5 at 7. fInasmuch as the application fee for such

admission is $100 per application in this district, the court will reduce the

expenses sought by plaintiffs by $200. Accordingly, I recommend that

plaintiffs be awarded $5,746.23 in costs.

G.    Allocation

Despite having also named Onondaga County and local municipal

defendants, plaintiffs seek costs only against the New York State Board of

Elections defendants. Defendants argue that the costs should be

apportioned among the various defendants including the state and local

municipal officials sued. Dkt. No. 80 at 17-20.

The court retains the discretion to apportion a fee award among all

defendants. *See Koster v. Perales*, 903 F.2d 131, 139 (2d Cir. 1990),

---

[9]    The Wladis Firm has excluded, without explanation, their expenses associated with attendance at the July 26, 2017 settlement conference. *See* Dkt. No. 57-3 at 11.

*abrogation on other grounds recognized by N.Y. State Fed'n of Taxi Drivers, Inc. v. Westchester Cty. Taxi & Limousine Comm'n*, 272 F.3d 154, 158 (2d Cir. 2001) (per curiam) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1982)). The witness residency requirements under challenge in this action, however, were contained within state statutes, which the New York State Board of Elections continued to enforce through its forms requiring each witness to sign, under penalty of perjury, that he or she was a resident of the village where the witness was circulating petitions. *See* Dkt. No. 57-1 at 8, n. 1. It was the State of New York Board of Elections that allowed the facially unconstitutional witness residency requirement to persist, and to be enforced, until recently. A cynic might argue that it was only when this suit was brought, and injunctive relief awarded, that plaintiffs and others obtained final relief from the offending statutes. Given these circumstances, I recommend against apportionment of the fee award, and instead recommend that it be awarded solely against defendants Peter S. Kosinski, Douglas A. Kellner, Andrew J. Spano and Gregory P. Peterson in their official capacities of representatives of the New York State Board of Elections.

IV.    SUMMARY AND RECOMMENDATION

Having reviewed the parties' submissions, and based upon the court's familiarity with this case, I recommend a finding that plaintiffs were prevailing parties, and that there are no special circumstances warranting denial of their request for costs and attorney's fees. I further find that the rates at which plaintiffs' attorneys seek recovery are reasonable, but that the hours claimed were not wholly reasonably expended and therefore recommend a further thirty-three percent discount beyond the elimination of certain hours and the ten percent discount already offered by plaintiffs' counsel. With those discounts, I recommend a fee award calculated as follows:

| Attorney | Rate | Number of Hours | Total |
|---|---|---|---|
| Torchinsky | $350 | 33.75 | $11,812.50 |
| Sheehy | $200 | 147 | $29,400.00 |
| Lambrecht | $350 | 67.7 | $23,695.00 |
|  |  | Minus 10% | <$6,490.75> |
|  |  | Total Claimed | $58,416.75 |
|  |  | Minus 33% | <$19,277.53> |
|  |  | Total | $39,139.22 |

In addition I recommend that an award of costs be made in favor of plaintiffs in an additional amount of $5,746.23. Accordingly, it is hereby respectfully

RECOMMENDED that plaintiffs in this action be awarded, as against defendants Peter S. Kosinski, Douglas A. Kellner, Andrew J. Spano and Gregory P. Peterson, in their official capacities only, costs and attorney's fees totaling $44,885.45, pursuant to 42 U.S.C. § 1988.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:     February 5, 2018
           Syracuse, NY